In re UNITED ROCKWOOL, INC. t/a United Mineral Manufacturing Co., Debtor.

Bankruptcy No. 82–00045–R.

United States Bankruptcy Court, E.D. Virginia, Richmond Division.

Aug. 19, 1983.

---

Daniel M. McCormack, Hirschler, Fleischer, Weinberg, Cox & Allen, Richmond, Va., for debtor.

## MEMORANDUM OPINION

BLACKWELL N. SHELLEY, Bankruptcy Judge.

This matter comes to the Court upon the application of Hirschler, Fleischer, Weinberg, Cox & Allen, the debtor's attorneys, for compensation. After proper notice, a hearing was held on this matter on July 8, 1983. After careful consideration of the findings at that hearing and the materials submitted by counsel, the Court renders the following opinion.

Under § 330 of the Bankruptcy Code, the Court may award to professionals, including any debtor's attorney,

(1) reasonable compensation for actual, necessary services rendered by such trustee, examiner, professional person, or attorney, as the case may be, and by any para-professional persons employed by such trustee, professional person, or attorney, as the case may be, based on the time, the nature, the extent, and the value of such services, and the cost of comparable services other than in a case under this title; and (2) reimbursement for actual, necessary expenses.

In making an award of compensation pursuant to § 330, the Courts have developed a number of factors to take into consideration. They are as follows:

(1) The time and labor required; (2) The novelty and difficulty of the questions; (3) The skill requisite to perform the legal service properly; (4) The preclusion of other employment by the attorney due to acceptance of the case; (5) The customary fee; (6) Whether the fee is fixed or contingent; (7) Time limitations imposed by the client and other circumstances; (8) The amount involved and the result obtained; (9) The experience, reputation, and ability of the attorneys; (10) The 'undesirability' of the case; (11) The nature and length of the professional relationship with the client; (12) Awards in similar cases."

*Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226 fn. 28 (4th Cir.1978), (citing *Johnson v. Georgia Highway Express*, 488 F.2d 714 (5th Cir.1974)).

Upon careful consideration of the relevant materials, this Court finds that the application and the exhibit thereto are in accordance with the Bankruptcy Code, Interim Bankruptcy Rules, and Local Rules of Procedure. In addition, the Court finds the following facts. All services for which compensation is requested were performed for and on behalf of the debtor and not on behalf of any committee, creditor, or other person.

The time and labor expended in the undertaking of the applicant is evidenced adequately by the time records filed as an exhibit to the application. The applicant accomplished the tasks necessary to confirm the modified plan in an efficient and time conscious manner. Despite this efficiency, the amount of time expended was great due to the complexity of the Chapter 11 case. For the most part, the applicant was involved in the complex analysis of legal and factual issues, critical negotiations, drafting sophisticated agreements, researching important legal issues, drafting proposals to and communicating with creditors and/or drafting Chapter 11 plans and the disclosure statement.

Some of the questions presented in this case were novel and difficult. The case involved preferred and common shareholders, bondholders, secured creditors, general unsecured creditors, and priority creditors.

Because of the novelty and difficulty of some of the issues raised and the different interests of the parties in interest, the skill required to perform properly the legal serv-

ices rendered and procure confirmation of the modified plan was more than that required in the routine Chapter 7 or 11 proceeding.

The applicant's opportunity costs in pressing this case was great. The applicant was owed approximately $85,000 by the debtor at the commencement of the proceeding. The substantial investment of time in all likelihood precluded the applicant from undertaking other matters for which the applicant could have been paid.

In securities matters, bond work, complex commercial transactions and complex bankruptcies, the customary fees for the attorneys who handle such matters is comparable with the hourly fees requested by the applicant. In addition, the hourly fee does not take into effect any other factors than time expended, and many attorneys, when rendering legal services, consider hourly rate and time expended to be only one factor in determining compensation.

Both the applicant and the debtor anticipated that the fee of the applicant would be based on hourly rates, subject to the supervision of this Court.

Although there were periods during the representation of the debtor when no legal services were required to be rendered, services were rendered generally in a compressed period of time with short deadlines. This was due to the fact that one undertaking could not be commenced until various benchmarks were reached and also due to limitations associated with the financing that provided the means of executing the modified plan.

The result obtained by the applicant in this Chapter 11 case was confirmation of a plan. Absent confirmation of the modified plan, at best secured creditors would have realized less than $1,500,000 (that being estimated liquidation of secured property) on claims of over $6,500,000. Priority and general unsecured creditors would have realized nothing. Through the efforts of the applicant, although unsecured creditors will receive nothing if the plan is completed successfully the secured creditors will realize ultimately in excess of $3,600,000 and

priority creditors will be paid in full. This result was accomplished during a time when the financial market and the market for the products that the debtor intended to manufacture were depressed.

The attorneys who rendered the services to the Debtor on behalf of the Applicant are competent and experienced and enjoy a sound reputation in the legal community.

This case was not undesirable in the sense that it involved representing a client who was espousing a view which was contrary to a prevailing view in the community. However, the case was undesirable in that it required a commitment to stand by a client in a very substantial matter with little likelihood of compensation if the confirmation had not been obtained.

Although the applicant has represented the debtor since its organization in March 1980, there was no longstanding relationship between the debtor and the applicant that would have required the applicant for some reason or some sense of loyalty to undertake a case of this kind.

The fee requested by the applicant is within the range of fees awarded by this Court in complex matters.

Despite the above, this Court is somewhat troubled by some aspects of the applicant's fee request. The Court is under a duty to determine independently the reasonableness of fees charged by professionals against the debtor's estate even if there are no objections by parties in interest. 11 U.S.C. §§ 329, 330, and 503(b); *In re Johnson,* 21 B.R. 217 (Bkrtcy.D.D.C.1982); *In re Erewhon, Inc.,* 21 B.R. 79 (Bkrtcy.D.Mass.1982). The new Bankruptcy Code rejects the previous "economy of administration" standard for compensating professionals and permits compensation competitive with other fields. However, fees should be closely scrutinized with a view towards eliminating excessive charges or wasteful services and expenditures of professional time. "In a manner of speaking, it is the duty of the court to ensure that the debtor receives what was 'bargained for'". *In re Liberal Market,*

*Inc.,* 24 B.R. 653, 658 (Bkrtcy.S.D.Ohio 1982).

■ In particular, this Court is concerned with the applicant's billing for duplicative services, travel time, insignificant matters, and preparation of the subject application. A thorough review of the time records reflects that 13 attorneys filed time records, 10 of which charged more than 25 hours each. Disturbingly, the records reflect considerable areas of double and triple teaming in conferences with the debtors, employees, and other parties. For example, on February 5, 1982, Mr. Kaplan recorded 4.5 hours in an office conference with McCormack and Buffenstein, his partner, and with Mr. Bailie, and on that same date Mr. McCormack recorded six hours of travel time to Baltimore and four hours in conference with Alex Brown and Sons, Mr. Bailie, and Mr. Kaplan in Baltimore. That would mean that Kaplan spent 14.5 hours on that date on this matter. However, the entry of February 6, 1982, reflects Kaplan spent six hours for travel to Baltimore for a meeting with Alex Brown and Sons. That date was a Saturday and likely is erroneous and was probably the 5th. If so, two attorneys traveled from Richmond to Baltimore and returned spending 12 hours travel and 9.5 hours in conference for a total of 21.5 hours time spent at $100.00 per hour for greater than $2,100.00 in fees for a day's work.

■ A debtor's estate should not bear the burden of a duplication of services, even where properly documented. *Cle-Ware Industries, Inc. v. Sokolsky,* 493 F.2d 863 (6th Cir.1974); *In re Liberal Market, Inc.,* 24 B.R. 653 (Bkrtcy.S.D.Ohio 1982); *In re International Coins & Currency, Inc.,* 22 B.R. 127 (Bkrtcy.D.Vt.1982); *In re Crutcher Transfer Line, Inc.,* 20 B.R. 705 (Bkrtcy.W. D.Ky.1982). Such duplication of efforts is particularly disturbing where numerous attorneys are involved and yet hours are billed by still additional attorneys merely to acquaint themselves with the case. Where duplicative services are billed this Court may have a duty to cut the applicant's fee request accordingly. *In re Liberal Market, Inc., supra* at 661–62; *In re Erewhon, Inc.,*

*supra* at 85. Moreover, this Court lauds the efforts of those attorneys who upon their own application "discount" their fee to avoid billing for duplicative services. *See, In re Liberal Market, supra* at 663.

■ In addition, as also evidenced by the above example, the applicant typically billed the debtor at its usual rate for travel time. It is this Court's belief that some consideration should be given to a lower fee when duties involve ministerial acts or travel as distinguished from pure legal services. *See, In re International Coins & Currency, Inc., supra* at 130; *In re Erewhon, supra* at 57; *In re Jones,* 13 B.R. 192 (Bkrtcy.E.D. Va.1951).

This Court is also concerned with excessive billing for irrelevant or insignificant matters. For example, there was approximately 19 hours expended in research on the issue of temporary restraining order against Virginia Electric and Power Company, an issue that was not tried before this Court. This was an inordinate amount of time for an incidental matter. *In re Erewhon, supra* at 83. Moreover, the applicant recorded at least 7.7 hours of billable time in preparation of applications and orders to employ itself and an accountant. Such charges are inordinate as well. A disservice to the debtor's estate results where an attorney bills an excessive amount of hours for hypothetical problems or for routine matters such as filing applications to employ professional persons. *See, In re Erewhon, Inc., supra* at 84.

■ Finally, the application for compensation includes at least 8 hours billed in preparing the application itself. These hours were billed at the attorneys' usual rates. Preparation of an application for compensation is more in the nature of a cost of doing business rather than a service rendered *for the debtor. In re Liberal Market, Inc., supra* at 661. Although some courts have permitted some compensation for such preparation, the amount must be reasonable and due to the nature of the work, if billable at all, should be done largely by parale-

gals or assistants rather than attorneys. *In re Erewhon, Inc. supra* at 89–90.

Despite this Court's numerous problems with the debtor's attorney's application for fees, it is inclined to award the amount requested. "The major criterion for compensation is and must be the value of the services to the client." *In re International Coins & Currency, Inc., supra* at 130. The attorney's client here was satisfied with the results obtained and the Chapter 11 estate was enhanced by the applicant's efforts. Thus, although this Court disfavors some of the applicant's billing practices, it holds that the fee request of $108,092.72 is reasonable and expense request of $3,511.71 is for actual, necessary expenses.

An appropriate Order will issue.