**In re WEISS–WOLF, INC., Debtor.**

**Bankruptcy No. 82 B 10935 (PBA).**

United States Bankruptcy Court,
S.D. New York.

March 31, 1986.

See also, D.C., 60 B.R. 969.

Marvin Neiman, New York City, for debtor.

Proskauer, Rose, Goetz & Mendelsohn, New York City, for Israel Discount Bank, Ltd. and Union Bank of Israel, Ltd.

Finkel, Goldstein & Berzow, New York City, for Unsecured Creditors' Committee.

Harold Jones, New York City, U.S. Trustee.

## MEMORANDUM DECISION AND ORDER DISAPPROVING DEBTOR'S DISCLOSURE STATEMENT

PRUDENCE B. ABRAM, Bankruptcy Judge:

On November 30, 1984, Weiss-Wolf, Inc. ("Debtor"), the debtor and debtor-in-possession in this Chapter 11 case, filed its Amended Disclosure Statement. The filing of the Amended Disclosure Statement followed the filing on November 14, 1984 of an objection to the original disclosure statement by the Unsecured Creditors' Committee. On November 28, 1984, the U.S. Trustee filed a statement in which it indicated that it had provided various comments to the Debtor relative to the disclosure statement and that when those changes were made it believed it would be in a position to not object to the entry of an order approving the disclosure statement. As a result of the changes made, apparently neither the Unsecured Creditors' Committee nor the U.S. Trustee have any objection to approval of the Amended Disclosure Statement.

Israel Discount Bank, Ltd. and Union Bank of Israel, Ltd. (the "Banks") also filed on November 28, 1984 a document containing objections to the original disclosure statement. The Banks' objections continue despite the amendments. Among the objections made by the Banks are objections to failure to disclose the operations as a debtor-in-possession, conclusory statements respecting tax refunds, failure to explain apparent discrepancies between the pre and post-filing assets, lack of any justification for the "extraordinarily large fees" that Debtor's counsel, accountants and other agents apparently intend to request and a two-step distribution scheme under which the holders of undisputed unsecured claims would receive an immediate distribution out of available assets and holders of disputed claims would be paid at some future date from monies the Debtor does not now possess and may never possess.

Bankruptcy Code § 1125(b) precludes solicitation of acceptances or rejections of a plan unless the solicitation is accompanied or preceded by a disclosure statement approved by the court as containing adequate information. The court may approve a disclosure statement without a valuation of the debtor or an appraisal of the debtor's assets. Bankruptcy Code § 1125(a)(1) defines adequate information as

"information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, that would enable a hypothetical reasonable investor typical of holders of claims or interests of the relevant class to make an informed judgment about the plan."

An investor typical of the class is one having such a relationship with the debtor as other holders generally have and having such ability to obtain information from sources other than the disclosure statement as other holders of claims in the class have. See Code § 1122(a)(2).

The Banks, the Debtor, the Debtor's two principals, Isaac Wolf and Irving Weiss, and an Israeli affiliate, Weiss-Wolf, Limited ("Limited"), have been engaged in highly adversarial civil and criminal litigation both in the United States and Israel since 1982. It is the Bank's position that Messrs. Weiss and Wolf and the Debtor guaranteed the obligations of Limited to the Banks. Those obligations are asserted to aggregate in excess of $11 million.

The Debtor's plan classifies creditors into 5 classes. Class 5, the only class of con-

cern, is comprised of all non-priority unsecured claims except for the claims of the officers of the Debtor, which claims are stated to have been renounced. The plan provides that the balance of monies remaining after payment to Classes 1, 3 and 4 shall be divided *pro rata* among allowed Class 5 claims and paid as follows:

"4. Due to the many outstanding issues, *i.e.*, final determination of administration expenses, final determination of all tax refunds due, and a final determination on the disputed claims, this plan will be implemented in two stages. One payment at confirmation (see sub-paragraph "h", below) and an additional payment upon resolution of all outstanding issues.

"a. It is estimated that the amount of assets that will be available for distribution will be in an amount between $650,000 and $700,000.

"b. It is estimated that the total Class 1 administration expenses will be approximately $450,000.

\* \* \* \* \* \*

"e. The total amount of undisputed and allowable Class 5 claims is approximately $5,457,276.

"f. The total amount of disputed claims under Class 5 is approximately $11,877,717.

"g. The total amount of all claims under Class 5 is $17,334,993.

"h. At confirmation the undisputed and allowable Class 5 claims as set forth above in sub-paragraph 'e' will be paid 1.06 cents on the dollar.

"i. The balance of debtor's assets will be held, in escrow, pending resolution of all issues set forth above. When all such issues are resolved, the balance of the debtor's assets will be divided *pro rata* among all allowable Class 5 claims after deducting a credit for any amount paid at confirmation."

■ As is readily apparent, although the Debtor has classified all non-priority unsecured claims together in Class 5, the Debtor has not made the same provision for payment of all Class 5 claims. The plan must treat claims in the same class alike, just as like claims must be classified together.[1] The Debtor's classification/payment scheme here is but a variant of the scheme this court disapproved in *In re Mastercraft Record Plating, Inc.*, 32 B.R. 106 (Bankr.S.D.N.Y.1983), reversed on other grounds, 39 B.R. 654 (S.D.N.Y.1984). It is merely separate classification of like claims in the guise of payment terms. The disparate treatment cannot be justified on the grounds that the Banks' claims are disputed by the Debtor. A debtor need not, of course, pay disputed claims until the claims are fixed and the dispute resolved. However, a debtor must make provision for payment of disputed claims so that if and when allowed the claims have reasonable assurance that they will receive identical treatment. Here it is evident that the Debtor's scheme is to leave the Banks with an empty bag as the Debtor proposes to distribute all known assets prior to resolution of the disputes respecting the Banks' claims.

■ Classification, a category into which this two-step payment scheme can be fit, is an issue which may be raised in several different ways and times. It can be raised at confirmation. However, nothing precludes its consideration at an early point in an appropriate case. This is such a case. The disadvantaged parties, the Banks, have clearly evinced that the present plan is unacceptable and thus the problem is a real one. This objection alone is sufficient to warrant disapproval of the Amended Disclosure Statement.

■ The court also finds the Amended Disclosure Statement deficient because it fails to set forth the basis for the estimate of $450,000 for expenses of administration. Based on this court's involvement with this case and its awareness of the services rendered by counsel for the Debtor in this Chapter 11 case, as well as its knowledge

---

1. A plan may provide for a class to have more than one payment option. However, all members of the class must have an equal right to elect each payment option.

of fees awarded to debtor's counsel in other Chapter 11 cases in this district, this court cannot comprehend an award to Debtor's counsel in this case remotely approaching the magnitude of $450,000. That figure must include the services rendered by Mr. Neiman in representation of Messrs. Weiss and Wolf and Limited, which are not compensable from this estate, as well as those on behalf of the Debtor. In the usual case, it is unnecessary to fix fees prior to approval of the disclosure statement. In this case stated counsel fees are over 64% of the limited sum available for distribution. While the provision for a final *pro rata* distribution would ultimately redistribute any monies freed up by a reduced award to counsel, the sheer magnitude of the amounts warrant, at a minimum, a statement in the disclosure statement that these numbers may be greatly in excess of the amounts which will be ultimately allowed.

■ The Banks are not typical of Class 5 creditors in regard to their access to information. The Banks have a greater access to information about the litigations than other creditors but may have less information than certain other Class 5 creditors respecting the assets and operations of the Debtor, including during the debtor-in-possession period. The court finds that a typical member of Class 5 ought, before being required to accept or reject the plan, to have more information accounting for the Debtor's assets. The limited information concerning the debtor-in-possession period is insufficient. As the Banks point out, the Debtor in the Amended Disclosure Statement has not attempted to explain or justify the $5 million gap between the assets it once claimed to have and those it now claims to have nor has it accounted for assets shown on its balance sheets at about the time the Chapter 11 petition was filed on May 19, 1982. The Debtor must provide at least a minimally adequate accounting in order that Class 5 claimants may be able to evaluate the options available. It is not enough for a debtor to say, in effect, trust me, this is a good deal for creditors.

The court declines to approve the Amended Disclosure Statement. Inasmuch as the court finds that the problems with the Amended Disclosure Statement extend to the sufficiency of the plan proposed and not simply to the adequacy of expression in the disclosure statement, the court will restore to its calendar for May 5, 1986 at 10:00 a.m. the hearing on the motion of the U.S. Trustee for an order converting this case to one under Chapter 7.

It is so ordered.