**In re SENECA OIL COMPANY, Debtor.**

**Bankruptcy No. BK–85–825–A.**

United States Bankruptcy Court, W.D. Oklahoma.

Oct. 9, 1986.

As Revised Oct. 27, 1986.

Ann Faford McWatters of Crowe & Dunlevy, Oklahoma City, Okl. and Lee Calligaro, Daniel E. Johnson of Casson, Calligaro & Mutryn, Washington, D.C. and Roger A. Grove of Horning, Johnson, Grove & Moore, Oklahoma City, Okl. for debtor.

Frank Polk and Ray Moss of Ames, Daugherty, Ashabranner, Fowler, Taylor, Lawrence & Moss, Oklahoma City, Okl. for Creditors' Committee.

David Cheek of McKinney, Stringer & Webster, Oklahoma City, Okl. and Eric M. Reuben, Emmet, Marvin & Martin, New York City, for the Bank of New York, Interfirst Bank Dallas, N.A., United Bank of Denver, Nat. Ass'n, Credit Suisse and Bank of Oklahoma, Oklahoma City, N.A.

Frederic Dorwart, Neil Tomlins of Holliman, Langholz, Runnels & Dorwart, Tulsa, Okl. for Kaiser-Francis Oil Co.

Marcia K. Sowles, Floyd I. Robinson, Beth M. Mizuno of U.S. Dept. of Energy, Washington, D.C. and Steven Mullins, Asst. U.S. Atty., Oklahoma City, Okl., for the U.S. Government.

RICHARD L. BOHANON, Bankruptcy Judge.

These contested matters concern allowance of interim and final requests for payment of professional fees and expenses for entities employed by the debtors and the Creditors' Committee pursuant to 11 U.S.C.A. §§ 330, 503(b), 1103 (West 1979 & Supp.1986) and certain creditors pursuant to 11 U.S.C.A. § 503(b)(3)(D), (b)(4) (West 1979 & Supp.1986).

In an earlier decision, *In re Wilson Foods Corp.*, 36 B.R. 317 (Bankr.W.D.Okla. 1984), ("Wilson Foods I"), this Court discussed the applicability of the factors set forth in *Ramos v. Lamm*, 713 F.2d 546 (10th Cir.1983) to a bankruptcy case. This discussion also concerns the standards followed when reviewing applications for allowance of fees and expenses. We will review the requests considering specifically the sufficiency of supporting documentation, the alleged excessiveness of hours and rates and the adequacy of disclosure by the plan proponents and Kaiser-Francis of their intent to request fees and expenses.

Seneca Oil Company and Seneca Drilling Company filed their Chapter 11 petitions in March 1985. The cases were consolidated for administration and plans were proposed. The Bank of New York, Interfirst Bank Dallas, N.A., United Bank of Denver, National Association, Credit Suisse and Bank of Oklahoma, Oklahoma City, N.A., proposed a plan for Kaiser-Francis Oil Company to acquire most of the assets of the debtors. This plan was confirmed in November 1985. Soon thereafter entities requested compensation and reimbursement of expenses exceeding $825,000. The professionals requesting the allowances are attorneys, accountants, petroleum engineers and management consultants.

The Department of Energy objects to all requests of attorneys except those providing services in the ordinary course of business to the debtor. The debtors object to the requests of attorneys for the plan proponent banks and Kaiser-Francis.

The debtors were public companies engaged in the acquisition, exploration, development and production of oil and gas and in contract drilling services.

Mineral interests were held in nine states but principally in Oklahoma. Financial statements indicate combined assets of about $34.2 million with oil and gas reserves valued at about $12.6 million. Secured claims total approximately $42 million and unsecured claims total approximately $35.5 million.

As of March 1985, stockholders equity was about a negative $42 million. There were 6,936,200 shares of common stock issued and outstanding held by 5,251 shareholders. The shares were traded over-the-counter on the National Association of Securities Dealers Automated Quotations System.

## I. Disclosure of Reasonably Foreseeable Administrative Requests.

The banks who actually proposed the plan and Kaiser-Francis who was the reorganizing entity seek reimbursement of their expenses under § 503(b)(3)(D) as creditors making a substantial contribution in the case, and reimbursement of their professional fees under § 503(b)(4).

In considering these motions we balance two policy considerations. First, entities should be encouraged to participate in the reorganization of an insolvent company. Second, creditors' interests in the

estate as well as the estate itself should be preserved by scrutinizing administrative expenses. This consideration is particularly important when considering large, undisclosed, foreseeable costs of administration which will materially impact the unsecured creditors. *In re Taylor Transport, Inc.,* 28 B.R. 832 (Bankr.Ohio 1983); *In re McAuley Textile Corp.,* 11 B.R. 646 (Bankr.Me.1981).

Section 503(b)(3)(D) provides for reimbursement of actual, necessary expenses incurred by entities in making a substantial contribution in a case. Section 503(b)(4) provides for reasonable compensation of an attorney or accountant of an entity whose expenses are allowed under § 503(b)(3)(D). Thus, allowance of reimbursement under § 503(b)(3)(D) is prerequisite to compensation under § 503(b)(4).

Section 503(b)(4) sets forth certain factors to be considered when reviewing an application for compensation. These factors are the time, nature, extent, and value of the services rendered and the cost of comparable services in nonbankruptcy cases.

However, before considering the requests we must determine whether the plan proponents and Kaiser-Francis adequately disclosed their intent to seek allowances.

Section 1125 requires that the court approve the disclosure statement and determine that it provides adequate information.

"[A]dequate information" means information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, that would enable a hypothetical reasonable investor typical of holders of claims or interests of the relevant class to make an informed judgment about the plan ...

11 U.S.C.A. § 1125(a)(1) (West 1979 & Supp.1986).

In describing the requirements of disclosure one court has stated:

As to administrative fees, the amended disclosure statement shall set forth estimated amounts to be claimed for debtors' attorneys' fees; unsecured creditors' committee's expenses; printing and mailing expenses for the plan; attorneys' fees as to future litigation; accounting fees for the purpose of filing necessary tax returns plus any other anticipated future costs of administration.

*In re William F. Gable Co.,* 10 B.R. 248, 249 (Bankr.N.D.W.Va.1981).

■ To be allowed, administrative expenses must be disclosed. It should not be left to the interested parties and the court to guess what expenses may be incurred. The burden is on the plan proponent to disclose all reasonably foreseeable fees and expenses that may be claimed as costs of administration.

Here the combined disclosure statement and plan did not reveal that the plan proponents or Kaiser-Francis would request compensation or reimbursement of expenses. Furthermore, at the confirmation hearing the proponents did not state any intent to seek fees and expenses from the estate.

The plan proponents say in the disclosure statement that "Chapter 11 costs" are to be paid by the reorganized company.[1] The disclosure is adequate in that regard. However, it was not disclosed that the plan proponents and Kaiser-Francis would seek reimbursement of *their* costs. These costs were foreseeable and could have been estimated.

■ Post-petition administrative expenses of the Chapter 11 proceeding are estimated in the disclosure statement to involve five claimants. Now eleven rather than five entities have requested compensation and reimbursement. This circumstance as well as proponents' failure to disclose their claims leads the court to con-

---

**1.** The Combined Disclosure Statement defines Chapter 11 costs to include, *"debtors'* costs, expenses, liabilities, and obligations including without limitation all disbursements to creditors in connection with the plan and all costs of administration not already paid". Combined Disclosure Statement at 10 (emphasis added).

clude that Kaiser-Francis' and the plan proponents' applications result from afterthought or they laid behind the proverbial log, only to disclose their requests after confirmation. The disclosure statement must specify the professionals who will be paid from estate assets. Nondisclosed entities will be denied compensation unless the disclosure is immaterial or the fees and expenses unforeseeable.

██ Administrative expenses are estimated in the disclosure statement to total $500,000. If the claimed sum of almost $828,000 were to be allowed the actual expenses would exceed the estimate by more than 65%. To permit the plan proponents and Kaiser-Francis to exceed their own estimates would unfairly allow them to reduce the price paid for the debtors' assets and securities at the expense of every impaired class. A plan proponent or purchaser of a debtor's assets who intends to apply for reimbursement of fees and expenses must specifically estimate its costs in the disclosure statement or they will be disallowed. *In re Metrocraft Pub. Services, Inc.*, 39 B.R. 567 (Bankr.N.D.Ga. 1984); *In re William F. Gable Co.*, 10 B.R. 248 (Bankr.N.D.W.Va.1981); *see In re Weiss-Wolf, Inc.*, 59 B.R. 653 (Bankr.S.D. N.Y.1986). Significant variance from estimates will not be permitted without justification.

██ The disclosure statement need not meet the requirements of federal or state securities legislation. *In re Stanley Hotel, Inc.*, 13 B.R. 926 (Bankr.D.Colo.1981). In determining the adequacy of information contained in a disclosure statement, however, the court may consider practices of the Securities and Exchange Commission. 11 U.S.C.A. §§ 1125(d), 1145 (West 1979 & Supp.1986).

The fundamental purpose of the Securities Act of 1933 is protection of investors through full disclosure of information necessary to an informed investment decision. *S.E.C. v. Capital Gains Research Bureau*, 375 U.S. 180, 84 S.Ct. 275, 11 L.Ed.2d 237 (1963). The primary disclosure vehicle is the registration statement. Instructions concerning material information to be included in the statement are particularly set forth at 17 C.F.R. §§ 229.1–229.517 (1986). Section 229.511 provides for disclosure of other expenses of issuance and distribution, including professional fees. The instruction to Item 511 of Forms S–1, S–2 and S–3 provides:

> Insofar as practicable ... legal, accounting and engineering fees shall be itemized separately. The information may be given as subject to future contingencies. If the amounts of any items are not known, estimates, identified as such shall be given.

17 C.F.R. § 229.511 (1986).

These regulations indicate clearly that adequate information concerning professional fees is material to the investor.

The objective of disclosure in bankruptcy is similar to the purpose of the Securities Act. A reasonable and typical creditor or equity security holder must be provided adequate information to make an informed judgment regarding a proposed plan. *In re Werth*, 29 B.R. 220 (Bankr.D.Colo.1983), 11 U.S.C.A. § 1125 (West 1979 & Supp. 1986). The primary vehicle to provide this information is the disclosure statement. By accepting the plan creditors invest their claims toward its effective implementation. Thus, like securities regulations, disclosure requirements in bankruptcy mandate adequate disclosure of material and foreseeable administrative expenses, including legal fees. There was not adequate disclosure in this case.

A plan also must be feasible to be confirmed. 11 U.S.C.A. § 1129(a)(11) (West 1979 & Supp.1986). Administrative claims draw off the most liquid assets and thereby directly impact feasibility of a plan. Since the proponents' and Kaiser-Francis' claims were not disclosed, they could not be considered when evaluating feasibility. Disclosure of the requests during the plan confirmation process might have affected the Court's consideration of this finding and may have influenced the votes of the affected creditors.

■ The Kaiser-Francis and plan proponents requests for allowances are denied in full due to their failure to disclose the intent to apply for the allowances, and the impact disclosure might have had on the finding of feasibility.

II. *Sufficiency of Documentation Supporting Requests for Compensation and Determination of the Rate of Compensation.*

Having discussed the requests of the plan proponents and Kaiser-Francis we now consider the requests of the other movants which include attorneys for debtor and the Creditors' Committee.

"Compensation is the lubricant which makes the bankruptcy machinery work when applied in the proper places in the proper amount. . . . Compensation is a basic, essential, and independent part of the system. . . . Those who in good faith provide valuable services have a right to rely on the provisions for compensation." *Matter of King Resources,* 651 F.2d 1349, 1352 (10th Cir.1980).

■ Our duty is to review the requests on behalf of the estate to assure *quantum meruit. Matter of Liberal Market, Inc.,* 24 B.R. 653 (Bankr.S.D.Ohio 1982). This requires that movants provide sufficient information to assure the court that work performed was necessary and charges reasonable. The requirements are neither more strict nor more lax than the practice of law generally requires. We are cognizant that the court, unlike a client, does not negotiate an employment contract with each attorney. Reliance on generally

accepted professional practices replaces the affect of such negotiations and provides a reasonable and reliable basis for reviewing applications for allowances. The court will take judicial notice of the general billing practices in this area based on experience in private practice and observations from the bench.[2] *Matter of R.C. Sanders Technology Systems, Inc.,* 21 B.R. 40 (Bankr.N. H.1982). This policy abandons any vestiges of the "economy principle" developed under the Bankruptcy Act, and provides adequate compensation to maintain the interest of the current members of the bankruptcy bar and incentive to attract new members.

■ Several principles should be observed when requesting allowances. The result of observing these principles is a self-explanatory application. Meticulous, contemporaneous and specific time records must be kept. *Wilson Foods I; In re Morgan,* 48 B.R. 148 (Bankr.D.Md.1985); *In re Jensen-Farley Pictures,* 47 B.R. 557 (Bankr.D.Utah 1985); *In re Cohen & Thiros v. Keen Enterprises, Inc.,* 44 B.R. 570 (N.D.Ind.1984); *In re Best Pack Seafood,* 21 B.R. 852 (Bankr.D.Me.1982). These records should include all information needed to complete the application. Proper recordation of this information makes compilation of the application a mechanical process. *In re WHET, Inc.,* 61 B.R. 709 (Bankr.D.Mass.1986).

■ The application should include, in a legible, chronological form,[3] the date a task is performed, a brief, concise explanation of the task indicating its relevance to the

2. The Third Circuit has formed a Task Force Committee to devise and recommend an "optimum court-awarded fee system" and to periodically review and report on the progress of the system. This action was taken in response to perceived problems with the time/rate "lodestar" regime. Court Awarded Attorneys Fees, Report of the Third Circuit Task Force (October 8, 1985).

3. The chronological format is an adequate manner of presentation. However, the *WHET* court has instituted applications arranged by function or task. *In re WHET, Inc.,* 58 B.R. 278 (Bankr. D.Mass.1986). An example given by that court

is, "a recovery of a preference would be an appropriate sub-heading under which would be listed who did what and when and for how long, what was sought, what was recovered, with any explanatory remarks or, if nothing was recovered, why the estate nonetheless should bear the expense". *In re WHET, Inc.,* 58 B.R. 278, 282 (Bankr.D.Mass.1986). This explanation aids in the determination of reasonableness. We do not require this format but do recognize its value. Attorney time spent to supplement applications with information in this format will be reimburseable.

case, the time expended recorded to the nearest tenth of an hour, and the identity of the person who performed the task. If more than one person is involved in a single task the duties of each should be segregated to indicate their responsibilities.

■ When the explanation of a task includes reference to office conferences, telephone conversations or correspondence, the applicant should succinctly state the nature and substance of each conference, telephone conversation or letter. *In re Sapolin Paints, Inc.*, 38 B.R. 807 (Bankr.E.D. N.Y.1985); *In re Jones*, 13 B.R. 192 (Bankr.E.D.Va.1981). Each person involved in these communications should be identified in a manner which reveals their relationship to the case.

Abbreviations may be used but care should be taken to make them meaningful, mathematical calculations should be accurate and pages should be numbered.

■ When compensable and non-compensable items are lumped together in one entry it is impossible for the court to allocate time to each activity. In such case all the time may be disallowed. *In re Watson Seafood & Poultry*, 40 B.R. 436 (Bankr.N. C.1984); *In re Nation/Ruskin, Inc.*, 22 B.R. 207 (Bankr.E.D.Pa.1982).

■ Time used to educate or familiarize oneself with the general Code provisions or basic law are efforts to make one competent. Since competence is a minimal standard which is presumed and expected, this time is not compensable. *In re Citizens Mortgage Investment Trust*, 37 B.R. 813 (Bankr.D.Mass.1984); *Matter of Liberal Market, Inc.*, 24 B.R. 653 (Bankr.S.D.Ohio 1982); *In re St. Pierre*, 4 B.R. 184, (Bankr. D.R.I.1980).

■ Duplication of services will result in reduction or partial denial of awards. When more than one attorney is involved in a task, or when more than one law firm is representing a single entity the likelihood of duplication of efforts increases. *In re Sapolin Paints, Inc.*, 38 B.R. 807 (Bankr. E.D.N.Y.1985); *Matter of Liberal Market, Inc.*, 24 B.R. 653 (S.D.Ohio 1982). We rec-

ognize that a lawyer need not actively participate in a proceeding to provide valuable insights and observations. We are not willing, however, to require the estate to pay for training an apprentice attorney or for the presence of a non-participating attorney. Thus, when more than one attorney attends a meeting, hearing, deposition, etc., unless both actively participate or duplication is plainly justified, a reduced fee or perhaps no fee will be allowed the second attorney. At least one court determines a reasonable fee for one attorney and prorates it among all attending attorneys. *In re Clayton Grain Elevator, Inc.*, 30 B.R. 760 (Bankr.La.1983).

■ Unproductive travel time should not be billed. Only that portion of travel time actually used to administer necessary services to a client will be compensated. *In re Jensen-Farley Pictures, Inc.*, 47 B.R. 557 (Bankr.D.Utah 1985).

Completing time sheets and preparing and presenting motions for reimbursement of fees and expenses can be a tedious task. Such efforts are required to assure that the standards of the Code are followed and to provide an objective basis upon which a court may allow compensation. Some courts provide compensation from the estate for these efforts on the basis that accurate and detailed records assist administration of the estate. *In re Nucorp Energy, Inc.*, 764 F.2d 655 (9th Cir.1985); *In re Jensen-Farley Pictures*, 47 B.R. 557 (Bankr.D.Utah 1985); *In re Four Star Terminals, Inc.*, 42 B.R. 419 (Bankr.D.Alaska 1984); *In re Advance Press & Litho, Inc.*, 46 B.R. 700 (Bankr.D.C.Colo.1984). Other courts view this time as a necessary expense of doing business and, therefore, do not allow compensation. *In re Hotel Associates, Inc.*, 28 B.R. 332 (Bankr.E.D.Pa. 1983); *Matter of Liberal Market, Inc.*, 24 B.R. 653 (Bankr.S.D.Ohio 1982); *In re Nova Real Estate Inv. Trust*, 25 B.R. 252 (Bankr.E.D.Va.1982); *In re Absco, Inc.*, 23 B.R. 250 (Bankr.E.D.Pa.1982); *In re Cipriano*, 8 B.R. 697 (Bankr.D.R.I.1981).

Several of these cases follow the reasoning of civil rights cases regarding attorney fees. The purpose of compensation for efforts to resolve fee issues under 42 U.S.C.A. § 1988 (West 1981) is to encourage attorneys to represent clients who would otherwise be unable to obtain counsel and to act as private attorneys general in vindicating federal civil rights policies. *Hernandez v. George*, 793 F.2d 264 (10th Cir. 1986). The purpose of the Bankruptcy Code provisions allowing compensation are not completely analogous. We are to encourage participation in bankruptcy matters and assure compensation reasonably equivalent to that received by professionals outside the bankruptcy area. It is important that fees be economical but not 'parsimonious' so that competent counsel will be available. *In re WHET, Inc.*, 58 B.R. 278 (Bankr.D.Mass.1986). Cases deciding issues related to statutory attorney fees in other areas of law are instructive but not necessarily applicable under the Code.

We have held previously that efforts to prepare and present fee applications are not compensable. *Wilson Foods I.* We now hold that a portion of this time is compensable.

The work involved in obtaining court approval of a request involves a somewhat different process and more time than is required to prepare a bill in a nonbankruptcy matter. Where an attorney is required to expend uncompensated time the effective hourly rate is decreased. That result conflicts with the intent that bankruptcy and nonbankruptcy attorneys be similarly compensated.

In finding that debtor's court-approved attorney should be compensated for time expended to prepare and present its fee application one court has stated:

[I]t is both inconsistent with the express policy of the Bankruptcy Reform Act and fundamentally inequitable to impose substantial requirements on bankruptcy counsel as prerequisites to their obtaining compensation while simultaneously denying compensation for the efforts necessary to comply with those requirements.

*In re Nucorp Energy, Inc.*, 764 F.2d 655, 659 (9th Cir.1985).

The *Nucorp* court also reasoned that since relatively detailed, complex and burdensome fee applications are required by statute, are important to all parties, and assist the court, the work involved in preparing and presenting fee applications is an "actual and necessary" service.

We agree with the reasoning of *Nucorp* and hold that attorneys are entitled to reasonable compensation for efforts expended to prepare and present fee applications to the extent that they represent an additional burden imposed on the professionals by the Code. Only the time expended to sustain that additional burden should be allowed. *In re WHET, Inc.*, 61 B.R. 709, (Bankr.D.Mass.1986). Therefore, allowances for compensation and expenses are appropriate for time required to prepare the application and the notice and for time in court to present the request. The time required to prepare the application and order for employment pursuant to Fed. R.Bankr.P. 2014 is also allowable. However, since a detailed billing summary including the same information as required by Bankruptcy Rule 2016 is generally prepared by a professional for a client, those efforts do not represent an additional burden and compensation for them will continue to be disallowed.

Several courts distinguish "truly legal services" from "ministerial tasks" and either disallow or reduce rates accordingly. *In re American International Airways, Inc.*, 47 B.R. 716 (Bankr.E.D.Pa. 1985); *In re Harmen Supermarket, Inc.*, 44 B.R. 918 (Bankr.W.D.Va.1984); *In re Air Vermont*, 40 B.R. 323 (Bankr.D.Vermont 1984); *In re Sapolin Paints, Inc.*, 38 B.R. 807 (Bankr.E.D.N.Y.1984); *Matter of Rego Crescent Corp.*, 37 B.R. 1000 (Bankr. E.D.N.Y.1984); *Matter of Minton Group, Inc.*, 33 B.R. 38 (Bankr.S.D.N.Y.1983); *In re United Rockwool, Inc.*, 32 B.R. 558 (Bankr.E.D.Va.1983); *In re Horn & Hardart Baking Company*, 30 B.R. 938

(Bankr.E.D.Pa.1983); *Matter of May Drug Co., Inc.*, 28 B.R. 923 (Bankr.E.D.N.Y. 1983); *In re Idak Corporation*, 26 B.R. 793 (Bankr.D.Mass.1982); *In re Lafayette Radio Electronics Corporation*, 16 B.R. 360 (Bankr.E.D.N.Y.1982); *In re Hotel Associates, Inc.*, 15 B.R. 487 (Bankr.E.D.Pa. 1981); *Matter of Nu-Process Industries*, 13 B.R. 136 (Bankr.E.D.Mich.1981); *In re Jones*, 13 B.R. 192 (Bankr.E.D.Va.1981); *In re Underground Utilities Construction Co.*, 13 B.R. 735 (Bankr.S.D.Fla.1981). The Department of Energy urges us to adopt this distinction which results in different rates for telephone, settlement, office and client conferences, research, trial preparation and court appearances. Where a court chooses to delineate between ministerial and legal tasks it necessarily directs the manner in which attorneys manage their firms. Such delineation would encumber daily management decisions concerning the activities attorneys will pursue. It also requires attorneys to assign personnel to tasks based on some imposed job description rather than the efficacies and urgencies of the situation. This is beyond the court's duty to assure reasonable fees. We feel it is best to leave managerial decisions to the law firms. Therefore, decisions concerning which tasks an attorney performs and involving the allocation of personnel toward the efficient and effective completion of tasks will be left to the discretion of the professional unless the allocation is egregious. *In re Jensen-Farley Pictures*, 47 B.R. 557 (Bankr.D.Utah 1985). Attorneys should adhere to standards which will efficiently use their high level of training, effectively resolve a problem, and obtain the best result for their clients at a reasonable fee.

Two topics are generally discussed when determining reasonable hourly rates. First, determination of a reasonable hourly rate for attorneys within the geographic area of the court. *In re Consolidated Bancshares, Inc.*, 49 B.R. 467 (Bankr.N.D. Tex.1985); *In re General Oil Distributors, Inc.*, 51 B.R. 794 (Bankr.E.D.N.Y.1985); *In re Four Star Terminals, Inc.*, 42 B.R. 419 (Bankr.D.Alaska 1984); *Matter of Rego Crescent Corp.*, 37 B.R. 1000 (Bankr.E.D. N.Y.1984); *In re Bishop*, 32 B.R. 302 (Bankr.R.I.1983); *Matter of Liberal Market, Inc.*, 24 B.R. 653 (Bankr.S.D.Ohio 1982). And, second, whether rates for attorneys from outside the geographic area should be based on rates of local attorneys. *Wilson Foods I; In re Jensen-Farley Pictures*, 47 B.R. 557 (Bankr.D.Utah 1985); *In re Atlas Automation*, 27 B.R. 820 (Bankr. S.D.Mich.1983).

The *Jensen-Farley* court, addressing the second topic, took a different approach than we have. That court assumed that whenever counsel is hired the national market influences the rate. We have concluded that only a national case will involve a national market. *In re Wilson Foods Corps.*, 40 B.R. 118 (Bankr.D.Okla.1984) (*"Wilson Foods II"*). When a case is not national the market is limited to the geographic area involved. A case involving a debtor doing business principally in a certain region, concerning assets in that region, and primarily including parties from that region is of limited geographic area and thus of a limited market. So long as competent bankruptcy attorneys are available within that region the market rate within it prevails. If attorneys from outside the region wish to practice in a regional market their rates should be competitive with rates for comparable services found within the regional market.

When considering the first topic courts have applied two methods to determine a reasonable hourly rate. The first involves a determination of a reasonable rate for each classification of attorney. *In re White Motor Credit Corp.*, 50 B.R. 885 (Bankr.N.D.Ohio 1985). Courts applying the other method determine an average reasonable hourly rate allowed all attorneys and an average reasonable hourly rate allowed law clerks and legal assistants. *In re Southern Indus. Banking Corp.*, 41 B.R. 606 (Bankr.E.D.Tenn.1984); *Matter of Liberal Market, Inc.*, 24 B.R. 653 (Bankr.S.D.Ohio 1982).

We believe that calculation of the average hourly rate is a useful element in de-

termining the compensation to be allowed a law firm. It is the Court's observation that the average hourly rate for law firms in this district is approximately $95 to $105. This rate includes the time of law clerks and legal assistants. When this norm is exceeded it must be justified by a careful review of the rate requested by each classification of attorney.

■■■ There have been several cases which address enhancement of fees. We addressed this topic in *Wilson Foods II*. It now appears that the factors [4] previously reviewed when considering enhancement of fees are to be included in the determination of the reasonable hourly rate. *Pennsylvania v. Delaware Valley Citizens' Council*, 478 U.S. ——, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986); *Mares v. Credit Bureau of Raton*, 801 F.2d 1197 (10th Cir.1986); *Wilson Foods II; In re Four Star Terminals, Inc.*, 42 B.R. 419 (Bankr.D.Alaska 1984).

The number of hours allowed is the sum of the reasonable time expended on necessary tasks. This sum is multiplied by the reasonable hourly rate to reach the "lodestar" fee. At least four of the *Johnson* factors are used to determine the rate for this calculation.[5] Adjustments to the lodestar fee are "proper only in certain 'rare' and 'exceptional' cases, supported by both 'specific evidence' on the record and detailed findings by the lower courts". *Pennsylvania v. Delaware Valley Citizens' Council*, 478 U.S. ——, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986), quoting *Blum v. Stenson*, 465 U.S. 886, 898–901, 104 S.Ct.

1541, 1548–50, 79 L.Ed.2d 891 (1984); *Riverside v. Rivera*, 477 U.S. ——, 106 S.Ct. 2686, 91 L.Ed.2d 466 (1986).

III. *Sufficiency of Documentation Supporting Requests for Reimbursement and Determination of Allowable Expenses.*

■■■ Just as hourly records form the basis for compensation awards, expense records are necessary to justify reimbursement of expenses. The records should set forth sufficient information for the court to ascertain the necessity and reasonableness of each item. As an example, it is insufficient to charge for "photocopies". An adequate description would be, "10 photocopies of the disclosure statement, 100 pages at $.10 per page". General descriptions of expense items will suffice but extraordinary expenses (e.g., copying and mailing of the plan) should be specifically set forth, with allowance for reasonable "miscellaneous" matters.

Some expenses are overhead and thus the responsibility of the professional as part of the cost of doing business. *In re Citizens Mortgage Investment Trust*, 37 B.R. 813 (Bankr.Mass.1984). The *Jensen-Farley* court defines 'overhead' as:

[A]ll continuous administrative or general costs or expenses incident to the operation of the firm which cannot be attributed to a particular client or case. The term is not definable with exact precision, but may be exemplified by such items as rent, taxes, insurance, lighting,

---

**4.** The "Johnson" factors include: 1) the time and labor required; 2) the novelty and difficulty of the questions; 3) the skill requisite to perform the legal service properly; 4) the preclusion of other employment by the attorney due to acceptance of the cases; 5) the customary fee; 6) whether the fee is fixed or contingent; 7) time limitations imposed by the client or other circumstances; 8) the amount involved and the results obtained; 9) the experience, reputation, and ability of the attorneys; 10) the "undesirability" of the case; 11) the nature and length of the professional relationship with the client; and 12) awards in similar cases. *Johnson v.*

*Georgia Highway Express, Inc.,* 488 F.2d 714, 717–719 (5th Cir.1974).

**5.** These are the "'novelty [and] complexity of the issues', 'the special skill and experience of counsel', the 'quality of representation', and the 'results obtained' from the litigation ...". *Pennsylvania v. Delaware Valley Citizens' Council,* 478 U.S. ——, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986) quoting *Blum v. Stenson,* 465 U.S. 886, 898–900, 104 S.Ct. 1541, 1548–49, 79 L.Ed.2d 891 (1984).

heating, and other office expenses, including secretarial services.

*In re Jensen-Farley Pictures*, 47 B.R. 557, 584 (Bankr.D.Utah 1985).

 We find this statement is adequate. In addition to the overhead items enumerated in *Jensen-Farley* we specifically find the following items are not reimbursable: local mileage, ordinary course of business postal charges, unnecessary "express" mail or local messenger services, word processing, local telephone charges, books, and basic subscriptions for computer research tools.

 Other expenses should be allowed to the extent generally accepted professional practices deem them reasonable. A different decision could result in an increase in hourly rates, discourage use of helpful research tools, or reduce the incentive for professionals to practice before bankruptcy courts. The following actual expenses are allowable if shown to be reasonable and necessary: photocopying, extraordinary postage (e.g., serving numerous copies of a plan and disclosure statement), long distance telephone charges, computer research time, required out-of-town meals, lodging and transportation, and court costs. Photocopying at rates comparable to the rates charged by commercial copy shops in the area is obviously reasonable. Higher rates may be justified where the applicant shows good cause. The estate should be required to bear only the actual expenses incurred and professionals will normally not be allowed any amounts in addition to their out-of-pocket costs.

## IV. *Conclusion*

Accordingly, the motions of the plan proponents and Kaiser-Francis are denied for the reasons stated previously.

Since the particulars will be of interest only to the parties involved separate orders will be entered on each of the remaining motions specifying which portions are allowed.