In re Ressie D. MULL and Darlene M. Mull, Debtors.

ITT CONSUMER FINANCIAL CORP., a corporation d/b/a ITT Financial Services, Plaintiff,

v.

Ressie D. MULL and Darlene M. Mull, Defendants.

Bankruptcy No. BK–90–00849–LN.
Adv. No. 90–0181–LN.

United States Bankruptcy Court, W.D. Oklahoma.

Jan. 11, 1991.

Jerome S. Sepkowitz, Oklahoma City, Okl., for plaintiff.

Carole J. Brown, Lawton, Okl., for debtors.

## ORDER ON APPLICATION TO AWARD ATTORNEY FEES

PAUL B. LINDSEY, Bankruptcy Judge.

### BACKGROUND

This adversary proceeding was filed by plaintiff, ITT Consumer Financial Corp. ("ITT") on May 10, 1990, seeking a determination under 11 U.S.C. § 523(a)(2)(B)[1] that a certain debt owed to ITT by debtors should be excepted from their discharge.[2] Debtors filed their answer in which, *inter alia*, they requested an order awarding them their fees and costs under § 523(d).[3] A scheduling order was entered by this court establishing various pretrial deadlines and setting the case for trial on Monday, October 15, 1990. No pretrial discovery was sought by ITT. On Friday, October 12, 1990, counsel for ITT announced that the adversary proceeding would be dismissed.[4]

Thereafter, debtors filed their application under § 523(d), seeking attorney fees and costs in the aggregate amount of $2,284.50. In support of their application, debtors point out the failure of ITT to engage in discovery, assert that ITT's only activity was attempting to obtain a cash settlement from debtors, and point out that only $73.88 was advanced as "new money" on the renewal transaction which was the basis of ITT's complaint, asserting, without authority, that the "usual" measure of damages in a § 523(a)(2)(B) action is the new money which the borrower induces the lender .to advance. Debtors also assert that the transaction was entered into only at the strenuous urging of ITT's employees, and that the $73.88 was applied by ITT against the next payment. Finally, debtors contend that they did not provide the information complained of by ITT and that ITT had obtained a credit report prior to the transaction.

Citing only the language of § 523(a)(2)(B) itself, ITT points out in response that an extension, renewal or refinancing of credit, and not merely "new money," are encompassed by the provision, and asserts that it renewed the credit extended to debtors and granted additional time within which the debt could be paid. ITT then asserts that: Section 523(d) is applicable only where the court conducts a hearing on the merits and judicially determines based upon the evidence that the debt is dischargeable; that here there was no hearing; that debtors did not "prevail"; that there was no determination of dischargeability; and that to award attorney fees to debtors would be unjust.

A hearing was held at which counsel for ITT and debtors were present and at which the positions of both were presented. At the conclusion of the hearing, the court took the matter under advisement.

### DISCUSSION AND DECISION

It should first be noted that the applicability of § 523(a)(2)(A) and (B) extends not only to "new money," but, by their very terms, to "extension, renewal, or refinancing" of credit as well. In *John Deere Company v. Gerlach (In re Gerlach)*, 897 F.2d 1048 (10th Cir.1990), a case involving allegations of fraud under

---

1. Reference hereafter to statutory provisions by section number alone will be to the provisions of the Bankruptcy Code, 11 U.S.C. §§ 101 et seq. unless otherwise noted.

2. The last date for filing complaints under § 523 was May 25, 1990, as prescribed by Rule 4007(b), Fed.R.Bankr.P., and as set forth in the notice given by the Clerk of this court to all parties in interest.

3. Section 523(d) is, in its entirety, as follows: (d) If a creditor requests a determination of the dischargeability of a consumer debt under subsection (a)(2) of this section, and such debt is discharged, the court shall grant judgment in favor of the debtor for the costs of, and a reasonable attorney/s fee for, the proceeding if the court finds that the position of the creditor was not substantially justified, except that the court shall not award such costs and fees if special circumstances would make the award unjust.

4. It should be noted that no order dismissing the action has been sought from or entered by the court, as would be required by the provisions of Rule 41, Fed.R.Civ.P., made applicable to this proceeding by Rule 7041, Fed.R.Bankr.P., and that therefore, this adversary proceeding is still pending.

§ 523(a)(2)(A), the court emphasized the language quoted above, and, citing *Caspers v. Van Horne (In re Van Horne)*, 823 F.2d 1285, 1288–89 (8th Cir.1987), then stated that "... not only is a new debt procured through fraud excepted from discharge, but old debt which is extended, renewed, or refinanced through fraud is also nondischargeable." Since the quoted language is part of § 523(a)(2), and as such is equally applicable to subsections (A), and (B) of that section, the same result clearly would obtain with regard to old debt extended, renewed, or refinanced through a false financial statement.

■ Next, it is equally clear that the applicability of § 523(d) is not limited to situations in which there has been a hearing on the merits and an adjudication of dischargeability in which the debtor is the "prevailing party." The language of § 523(d) makes no reference to a hearing or an adjudication. The provision simply directs, under certain circumstances, that the court award costs and fees to the debtor if a creditor has requested a determination of dischargeability of a consumer debt "and such debt is discharged."

The provision would constitute a poor remedy indeed if a creditor could institute unjustified litigation and avoid the consequences of its actions by simply dismissing the litigation on the eve of trial. In *West Springfield M.E. Credit Union v. Finnie (In re Finnie)*, 21 B.R. 368 (Bankr.D.Mass. 1982), plaintiff announced on the day of trial that the § 523(a)(2) count in his complaint would not be pursued. Debtor sought relief under § 523(d), and the court's discussion of that provision begins with the following:

> The legislative history related to the passage of § 523(d) states:

> The purpose of the provision is to discourage creditors from initiating false financial statement exception to discharge actions in the hopes of obtaining a settlement from an honest debtor anxious to save attorney's fees. House R. No. 95–595, 95th Cong., 1st Sess. (1977)

365, U.S.Code Cong. & Admin.News 1978, p. 5787, 6321.

I would agree with the debtor that § 523(d) does not require a judgment on the dischargeability of a debt under subsection (a)(2) for the court to award costs and reasonable attorney's fees. If the purpose is to discourage the *initiation* of such complaints for the purpose of obtaining a settlement, the section must be made applicable to any action initiated under § 523(a)(2) which involves a consumer debt, and not just to those actions which result in an affirmative judgment. [footnote omitted.] Any other reading of the statute would permit creditors to press their complaints in the hopes of a settlement and, if none appeared, to withdraw their claim prior to judgment.

■ Whatever the motivation of ITT in instructing its counsel to initiate the adversary proceeding herein, according to its counsel the result was precisely that described by the court in *Finnie*. Counsel conceded that ITT had obtained a credit report and had it in its possession prior to the renewal transaction. Counsel then stated that when he concluded that it would be very difficult to establish the essential elements of § 523(a)(2)(B), he sought a settlement from debtors' counsel. When none was forthcoming, he announced, on the Friday prior to the scheduled Monday trial that the action would be dismissed.[5]

This court is compelled to conclude that this adversary proceeding was instituted by ITT with the improper motivation which gave rise to the adoption of § 523(d). Debtors allegedly failed to list, on a financial statement given to ITT prior to the renewal transaction, several debts which were reflected in the schedules accompanying their bankruptcy petition.

Debtors failed to specify in their schedules the dates when the listed liabilities were incurred, as is required by Official Bankruptcy Form 6. ITT, apparently without further inquiry and without reference to the credit report which it had obtained and, had in its possession, chose to assume

---

5. See footnote 3, *supra*.

that all liabilities listed on the schedules had been in existence when the financial statement was given by debtors. The financial statement was given on July 11, 1989 and the bankruptcy petition was filed on February 12, 1990. ITT's apparent assumption that all of debtors' liabilities as of the petition date were in existence seven months earlier would be wholly unsupportable even in the absence of a contemporaneous credit report.

It appears that ITT was not represented at the § 341 meeting of creditors, held in Lawton, Oklahoma on March 26, 1990, where it could have attempted to ascertain the dates on which the various scheduled liabilities were incurred. ITT's counsel stated to the court that Chapter 7 trustees normally would not permit creditors or their representatives to inquire as to discrepancies such as the failure to comply with the Official Forms, as here, and that therefore attendance at the § 341 meeting would have been unproductive. Whether or not such is the case, and the court will address hereafter the propriety of any such practice, it is also clear that ITT made no effort to obtain the required information, through an examination of debtors pursuant to Rule 2004, Fed.R.Bankr.P., or otherwise, at any time during the 45 days between the date of the § 341 meeting and the institution of this adversary proceeding. As is noted above, ITT also made no effort even after the adversary proceeding was filed, through normal discovery procedures, to ascertain the accuracy of its unsupportable assumption with regard to debtors' liabilities.

In these circumstances, this court has no difficulty whatever finding and concluding that the position of the creditor, ITT, in this adversary proceeding, was not substantially justified. Similarly, this court finds and concludes that there are no special circumstances present here which would make the award of fees and costs unjust. Thus, the requirements of § 523(d) have been satisfied, and it remains only for the court to determine the reasonableness of the attorney fee sought by debtors.

Counsel for debtors requests a fee of $2,226.00 and expenses of $58.50, for a total of $2,284.50. Counsel's fee request, based upon the reasonable hourly rate of $105.00, includes 14.4 hours expended through October 12, 1990, when the prospective dismissal was announced; 0.3 hours for a letter one week later to counsel for ITT, requesting a copy of the dismissal; 1.5 hours drafting the billing statement and application for fees; and an estimate of 5.0 hours for travel from Lawton, Oklahoma to Oklahoma City for attendance at the hearing on the application. The expenses, which are found to be reasonable, are for photocopies, mileage, tolls and parking fees.

■ This court is of the opinion that most of counsel's time was reasonably expended, including that time necessitated by the failure of ITT to respond to counsel's request for production of documents. In a case as uncomplicated as this, however, the court concludes that the time was expended in preparing the final pretrial order and in preparing for what was anticipated to be a very short trial was somewhat excessive. The preparation of the application for fees is compensable, but the drafting of counsel's billing statement to debtors, and unproductive travel time, is not. *See In re Seneca Oil Co.*, 65 B.R. 902, 909–910 (Bankr.W.D.Okla.1986) and cases cited therein.

■ The court therefore will reduce the amount claimed for trial and final pretrial order preparation by a total of 2.25 hours, disallow the 0.75 hour claimed for drafting the billing statement, and disallow 3.0 hours as the time necessary to travel to and from Oklahoma City for the hearing, a total reduction of 6.0 hours. The court concludes that the remaining 15.2 hours claimed by counsel were reasonably expended. Therefore, debtors should be awarded their costs, a reasonable attorney fee of $1,596.00 and the attorney's expenses of $58.50 under § 523(d).

### EPILOGUE

■ This court is well aware that the § 341 meeting of creditors is not, and

should not be, either a substitute for discovery or the forum for pre-trying an adversary proceeding. It serves the limited purpose of affording an opportunity for a general inquiry into the affairs and conduct of the debtor. By the same token, however, where the debtor has failed to comply with the Bankruptcy Code, Bankruptcy Rules or Official Bankruptcy Forms, as appears to have been the case here, it would appear that an inquiry into such failings would be not only appropriate but necessary to the proper administration of the bankruptcy case. If the trustee, the U.S. Trustee, or any other person presiding over the meeting does not initiate such an inquiry, a creditor should be permitted to do so, if desired, and if time constraints permit. Such inquiry, coupled where appropriate with a post–§ 341 meeting Rule 2004 examination, would serve the salutary purpose in many cases of providing creditors with the information necessary in order to determine whether the institution of adversary proceedings is warranted. This could be accomplished without actually instituting the proceeding and compelling debtors to respond, thus saving costs and fees on both sides.

Where adversary proceedings are actually instituted, presumably after appropriate inquiry into the underlying facts, creditors and their counsel remain under a duty to examine whether and to what extent their case is sound. Even a facially sound action may be rendered unsound by information obtained by or furnished to counsel or his client after the institution of the action. Should this occur, counsel's response should not be to immediately attempt to extract a settlement from the defendant, as apparently occurred here, and failing same to dismiss the proceeding. Continued pursuit of a settlement in a fatally flawed action after determination of its invalidity is in this court's view just as improper as is the institution of such an action with knowledge of its invalidity in the first instance. This is not to say that the discovery of a weakness, as opposed to a fatal defect, necessitates immediate dismissal of the action, but competent counsel should be expected to readily discern the difference and to act accordingly.

Judgment will be rendered in favor of debtors and against ITT, but not against its counsel, as set forth herein.

IT IS SO ORDERED.

## JUDGMENT

The court having entered this date its Order on Application to Award Attorney Fees, in which it set out its findings of fact and conclusions of law and decision, in favor of defendants and against plaintiff,

IT IS ORDERED, ADJUDGED AND DECREED that defendants be and they are hereby awarded their costs, a reasonable attorney fee in the amount of $1,596.00 and their attorney's expenses in the amount of $58.50.