In re Edward F. BISHOP, Debtor.

Bankruptcy No. 8200422.

United States Bankruptcy Court,
D. Rhode Island.

Aug. 12, 1983.

Allan M. Shine, Winograd, Shine & Zacks P.C., Providence, R.I., for debtor in possession.

## ORDER ON APPLICATION FOR COMPENSATION BY ATTORNEY FOR DEBTOR IN POSSESSION

ARTHUR N. VOTOLATO, Jr., Bankruptcy Judge.

Heard on May 16, 1983 on the application for compensation filed by Allan M. Shine, Esq. (Winograd, Shine & Zacks, P.C.) as counsel for the debtor in possession, wherein he requests $22,500 for services performed in that capacity. The Chapter 11 plan of reorganization which was confirmed on May 16, 1983 provides for payment of approximately $32,000 to non-insider general creditors with interest at 10% per annum,

and for satisfaction of the secured claim of Fleet National Bank by the execution of two mortgage notes, one to be paid over three years and the other over 20 years.

■ Based on Fleet National Bank's figures as to the amount due on the mortgage, compared with its own appraisals of the debtor's property, it is clear that there was always substantial equity in the real estate and that relief from the stay was not likely no matter how hard the secured creditor pushed. In this respect, therefore, no extraordinary services were required to be performed by the applicant. The main effort and accomplishment of counsel for the debtor in possession consisted of patiently resisting attempts to foreclose by the Bank, while a plan was formulated. The fees involved might have been substantially less, but for the time required to be spent in opposing Fleet's relentless attempts to foreclose, to convert, to dismiss the case, and to have a trustee appointed.[1]

■ At the Court's request, and because the application as filed was not sufficiently detailed,[2] the applicant informs us that the hourly rates charged by the attorneys who worked on this case are as follows: Allan Shine, Esq. $130 per hour, Allen P. Rubine, Esq. $115 per hour, and $85 per hour for services by Attorney Diane Finkle.

■ Compensation in bankruptcy cases is awarded pursuant to 11 U.S.C. § 330 which provides in part:

(a) After notice to any parties in interest and to the United States trustee and a hearing, and subject to sections 326, 328, and 329 of this title, the court may award to ... the debtor's attorney—

(1) reasonable compensation for actual, necessary services rendered by such ... attorney, ... and by any professional persons employed by such ... attorney, ... based on the time, the nature, the extent, and the value of such services, and the cost of comparable services other than in a case under this title ....

In addition to the factors listed in § 330, the Court is mindful of the considerations enumerated in *King v. Greenblatt*,[3] 560 F.2d 1024, 1026–27 (1st Cir.1977), *cert. denied*, 438 U.S. 916, 98 S.Ct. 3146, 57 L.Ed.2d 1161 (1978), as well as the "lodestar approach" to fee awards discussed in *Furtado v. Bishop*, 635 F.2d 915 (1st Cir.1980) and *In re Casco Bay Lines, Inc.*, 25 B.R. 747 (Bkrtcy. 1st Cir.1982).

All of the authorities considered provide in various ways for the determination of reasonable compensation for services rendered, taking into account customary fees for comparable work in the geographic area. For example, in explaining the lodestar approach the Court of Appeals for the First Circuit states:

The starting point is to calculate the "lodestar": "The number of hours reasonably expended multiplied by a reasonable hourly rate." This would involve

---

1. Compensation should not be reduced or denied in such circumstances, however, where the time expended was not at the option of the applicant. Here, the services were reasonable and necessary, and were performed competently. This Court suggests that secured creditors keep in mind that such persistence only diminishes the estate available for creditors, and is difficult to justify when there clearly is an equity cushion.

2. All applications should include a detailed breakdown of hours and hourly rates for each person in the firm involved in the case. Additionally, each type service should be listed with a specific time allotment. *See generally, In re Art Shirt, Ltd. Inc.,* 30 B.R. 318 (Bkrtcy.E.D. Penn.1983).

3. According to *King v. Greenblatt,* the twelve factors to be considered in arriving at reasonable fee awards are:

1) the time and labor required; 2) the novelty and difficulty of the question presented; 3) the skill required to perform the legal services; 4) the preclusion of other employment by the attorney due to acceptance of the case; 5) the customary fee in the community; 6) whether the fee is fixed or contingent; 7) time limitations imposed by client or circumstances; 8) the amount involved and the result obtained; 9) the experience, reputation and ability of the attorney; 10) the undesirability of the case; 11) the nature and length of the professional relationship with the client; 12) awards in similar cases.
560 F.2d at 1026–27.

separating out work done in relation to a firm's hierarchy, from senior partner to junior associate (and, we would add, including work that was or ought to have been assigned to a non-lawyer); eliminating time beyond that consistent with a standard of reasonable efficiency and productivity; and, after receiving documentation and possibly holding a hearing, assigning appropriate hourly rates for the kinds of work done by those at different levels of expertise. (citations omitted).

*Furtado,* 635 F.2d at 920.

For the information of attorneys who practice before this court, I take the opportunity to discuss what I consider to be fair guidelines or parameters of compensation for services currently being performed by bankruptcy practitioners in the greater Providence area. This is done after a continuing examination of applications and awards throughout the First Circuit, including fee determinations in the major metropolitan areas of Bangor, Portland and Boston, as well as Philadelphia (Third Circuit). The standards discussed herein generally apply to the highest rates currently being charged by the senior and most experienced practitioners[4] who appear before this Court, with appropriate adjustment for services performed by less experienced counsel.

Our review of reported awards in other cities reveals that in Boston the top hourly rate for a partner in an established law firm with "considerable reputation . . . as a leading practitioner of bankruptcy and reorganization law" is $150–$165 per hour. *In re Idak Corp.* 26 B.R. 793, 799–803 (Bkrtcy.D.Mass.1982). In *Idak* the high figure represented an upward adjustment of the lodestar rate[5] because the case required a commitment of ⅓ of the attorney's professional time, the risk of non-payment was great, and a highly favorable result was achieved through litigation handled by the

applicant. *Idak,* 26 B.R. at 800–01. The rate for an attorney in Boston in a less complicated case was set at $75 per hour in *In re Erewhon, Inc.,* 21 B.R. 79, 90 (Bkrtcy. D.Mass.1982), and of course numerous awards, reported and unreported, fall within the limits discussed above.

An examination of allowances in Maine discloses, not surprisingly, a lower going rate, generally established at $85–$100 per hour for a partner with considerable bankruptcy experience in Portland, and approximately $80–$85 in Bangor. *See In re Whitney,* 27 B.R. 352 (Bkrtcy.D.Me.1983). The unusually high rate of $125 per hour in Portland was recently awarded to a former bankruptcy judge turned practitioner. *See In re Casco Bay Lines, Inc.,* 25 B.R. 747, 753 (Bkrtcy. 1st Cir.1982); *contra, In re McAuley Textile Corp.,* 11 B.R. 646 (Bkrtcy.D.Me. 1981) ($125 per hour requested, $85 allowed). In *Casco Bay Lines,* the First Circuit Bankruptcy Appellate Panel reversed in part the decision of the bankruptcy judge who had reduced the compensation to an average $70 per hour. *See In re Casco Bay Lines,* No. 180–00186 (Bankr.D.Me. February 18, 1982).

The reported cases in Philadelphia indicate that $120 per hour is about the usual rate, with allowances ranging from $85 up to $175 for specialized tax advice, and services involving just a few hours. *In re Horn & Hardart Baking Co.,* 30 B.R. 938 (Bkrtcy. E.D.Pa.1983). In reducing one application in Philadelphia, Judge William King referred to these standards as "generous hourly rates." *Id.* at 942.

I think that rates in Providence generally must be lower than those in Boston or Philadelphia, but at least comparable with or higher than those in Portland. *See Lamphere v. Brown University,* 610 F.2d 46, 48 (1st Cir.1979) (Boston holds unenviable reputation for high costs). As for popula-

---

4. In calculating a reasonable hourly rate, such factors as the skill and reputation of the attorney in question should be taken into account. *See Furtado,* 635 F.2d at 920; *Casco Bay,* 25 B.R. at 755.

5. The lodestar is the number of hours reasonably expended multiplied by a reasonable hourly rate. *Furtado,* 635 F.2d at 920. In *Idak* the lodestar rate was $128 per hour; this was adjusted upward by 30%. *Idak,* 26 B.R. at 808.

tion and cost of living, Providence is more comparable to Portland than to Boston, although geographically closer to the latter. Upon consideration of many reported awards in the areas discussed, as well as the particular facts and demands of this case, I find that reasonable hourly rates of compensation for the individuals involved are as follows: Allan Shine, an attorney with long experience and excellent reputation in the bankruptcy field, $125 per hour; Allen Rubine, Esq., an able associate but with considerably less experience, $80 per hour; Diane Finkle, Esq., also very capable, but with approximately one year experience in practice, $60 per hour. We conclude that in Providence $125 per hour is at the upper limit of reasonableness even in the most difficult cases. That figure is supported by *Gabriele v. Southworth,* 712 F.2d 1505 (1st Cir.1983) in which the United States Court of Appeals for the First Circuit accepted the district court's rate determination of $70 per hour (out of court) and $75 per hour (in court) for the period ending December 31, 1978. The Court of Appeals, however, reduced the award because of excessive hours spent in preparing briefs and proposed findings. Although that opinion dealt with 1978 rates, $125 is also supported by a 1983 case in this district, *Farnum, et al. v. Burns, et al.,* C.A. No. 82–00500, ——

F.Supp. —— (D.R.I. May 18, 1983). In *Farnum,* after litigation, the successful attorneys in a complicated voting redistricting case were compensated at the rate of $100 per hour plus a 10% premium allowed because of the high contingency factor in that case, both as to likelihood of success and non-payment.[6] The instant case involved little risk of non-payment, and also absent was the element of highly concentrated amounts of attorney hours required in *Farnum* because of impending election dates.

■ Based solely upon the considerations and rates discussed above, the allowance, here, if figured strictly mathematically, would be $17,404. However, because hourly rate is only one of the factors to be considered in the determination of reasonable compensation, and in light of the strenuous opposition to the plan and the persistence of Fleet National Bank in its attempts to foreclose in the early stages of the case, $20,000 is probably a fair award.[7] In this case the plan provides for 100% payment of approximately $32,000 [8] to non-insider general creditors over three years, with interest at 10% per annum, and there is a reasonable likelihood that the plan will be consummated, since the debtor in possession has made his peace with the secured creditor largely

---

6. In a recent Florida Chapter 11 case, the bankruptcy judge awarded $137 per hour "which ordinarily would be deemed excessive in consideration of the services performed, however, payment for this type of employment is somewhat contingent and the fee is not unreasonable in light of that contingency." *In re Interstate Restaurant Systems, Inc.,* 30 B.R. 32 (Bkrtcy.S.D.Fla.1983).

7. I say "probably" because this court makes no pretense at being capable of determining reasonable compensation with precise certainty. We are in very subjective territory and this Court's decisions on fees represent only our best effort. This is not intended to be in the nature of an apology for inaccuracy, but to remind counsel that such subjectivity affects not only court decisions on fees, but the applications under consideration as well.

The United States Court of Appeals for the First Circuit has discussed the problem of fee determination in *Gabriele v. Southworth,* 712 F.2d 1505 (1st Cir.1983):

One opposing, for example, the reasonableness of time spent in one or more phases of litigation can go just so far in raising questions. Only rarely will he be able to demonstrate vividly that an issue was illusory, irrelevant, or frivolous or that too many facts and transcript references had been marshaled. This inability to "prove" a point does not relieve the judge from drawing on his own experience and wisdom and deciding whether the time spent on each phase was in excess of a reasonable amount. Nor should the judge become so deluged with details that he is unable to view the claims for fees in perspective. He must retain a sense of overall proportion.

8. It could be argued, in the rare instance where a fee application is objected to, that $20,000 is a disproportionately high attorney fee in a case where the general creditors expect to receive only $32,000 over three years. But this again is a factor that should not be considered in isolation.

through the efforts of Mr. Shine and his associates.

Accordingly, the application for compensation by counsel for the debtor in possession is allowed in the amount of $20,000.

Enter order accordingly.