In re WILSON FOODS CORPORATION, Williams Meat Co., Inc., Fischer Packing Company, Wilson Certified Express, Inc., Debtors.

Bankruptcy Nos. Bk–83–01034–A and Bk–83–01038–A—Bk–83–01040–A.

United States Bankruptcy Court, W.D. Oklahoma.

May 23, 1984.

See also Bkrtcy., 36 B.R. 317.

Reef C. Ivey, II, Gen. Counsel, Oklahoma City, Okl., for Wilson Foods Corp.

G. Blaine Schwabe III of Mock, Schwabe, Waldo, Elder, Reeves & Bryant, Oklahoma City, Okl., and Roy H. Carlin, of Reavis & McGrath, New York City, for debtors.

I. William Cohen of Hertzberg, Jacob & Weingarten, Detroit, Mich., for Unsecured Creditors' Committee.

## MEMORANDUM OPINION AND ORDER

RICHARD L. BOHANON, Bankruptcy Judge.

After a hearing on interim compensation for professional persons in this matter, counsel for the Official Unsecured Creditors' Committee has made application for additional compensation. The regular interim applications for fees have been disposed of and the only question we address is the propriety of the present application [1]

based on the facts of the case. The debtors have objected to the application essentially on the grounds that the Committee's counsel have had ample compensation and, therefore, consideration of an additional award should be foreclosed. A brief review of this case will serve to place the application and our opinion in perspective.

These debtors have operated their respective businesses as debtors in possession since filing voluntary petitions in April, 1983. On March 28, 1984, an order was entered confirming a plan of reorganization after nearly one year of hearings, meetings, negotiations and various other workouts. These matters consumed much of the Court's docket during that year and the Court had ample opportunity to observe all counsel. The confirmed plan called for a 100% payment plus interest to holders of unsecured claims represented by the Committee. This class comprises claims of a dollar sum in excess of $31 million.

Wilson Foods Corporation is the largest processor of pork in the United States and accounts for some 12.5% of the federally inspected slaughter of hogs. With respect to processors of all types of meats, the debtor ranks fifth in size. Information provided by the Examiner in this case show that the debtors' annual sales amounted to $2.2 billion in fiscal year 1982; the Company had assets of $284.8 million, and stockholders' equity was $83.3 million as of July, 1982. There has never been any controversy that the debtor entities were not solvent at the time their voluntary petitions were filed.

With this background we proceed to address the application for additional compensation and the objections raised by the debtors' counsel. Fee awards in bankruptcy proceedings must necessarily be governed by applicable provisions of the Bankruptcy Code. Section 330 provides that the

---

**1.** Such awards have variously been described as an upward adjustment, *Blum v. Stenson,* — U.S. ——, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984); a "premium" *Matter of Aminex Corporation,* 15 B.R. 356 (Bkrtcy.S.D.N.Y.1981); a "reward" *In re Yale Express Systems, Inc.,* 366 F.Supp. 1376 (D.S.D.N.Y.1973); a "bonus" *Matter of TMT*

*Trailer Ferry,* 577 F.2d 1296 (5th Cir.1978); and "enhancement" *Matter of Myers,* 4 B.R. 343 (Bkrtcy.N.D.Fla.1980). However, the Bankruptcy Code provides only for "reasonable compensation" under § 330. Thus, absent a showing of reasonableness, these terms become inappropriate under the Code.

Court may allow *"reasonable compensation* for actual, necessary services rendered ... based on the time, the nature, the extent, and the value of such services, and the cost of comparable services other than in a case under this title ...." (emphasis added) The concept of strict economy of administration under the former Act is no longer the rule. *Compare In re Beverly Crest Convalescent Hospital, Inc.*, 548 F.2d 817 (9th Cir.1976) *with In re Penn-Dixie Industries, Inc.*, 18 B.R. 834 (Bkrtcy.S.D.N.Y.1982), *see also* H.R.Rep. No. 595, 95th Cong., 1st Sess. 330 (1977) reprinted in 1978 U.S.Code Cong. & Admin. News, 5787, 6286. However, abandonment of the principle of economy does not imply that this concept is to be totally disregarded. Rather, the economy aspect merges with several other considerations in determining what is reasonable under the particular circumstances. The recognized factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), establish the objective basis in the overall determination.

At the outset we note that several other courts have allowed "additional" compensation in bankruptcy matters. *See e.g., Rose Pass Mines, Inc. v. Howard*, 615 F.2d 1088 (5th Cir.1980); *In re Warrior Drilling & Engineering Co., Inc.*, 18 B.R. 684 (Bkrtcy. N.D.Ala.1981); *In re Garland Corporation*, 8 B.R. 826 (Bkrtcy.D.Mass.1981); *In re Penn-Dixie Industries, Inc., supra; In re Nova Real Estate Investment Trust*, 30 B.R. 347 (Bkrtcy.E.D.Va.1983); *In re Werth*, 32 B.R. 442 (Bkrtcy.D.Col.1983); *In re Bishop*, 32 B.R. 302 (Bkrtcy.D.R.I.1983). Indeed, even under the Act where much emphasis was placed on economy of administration a "premium" award was not unheard of. *Matter of Aminex Corporation*, 15 B.R. 356 (Bkrtcy.S.D.N.Y.1981).

 The starting point for the calculation of fee awards is determining the number of hours reasonably spent multiplied by the hourly rate charged. *Ramos v. Lamm*, 713 F.2d 546 (10th Cir.1983). This calculation allows the court to arrive at what is sometimes called the "lodestar" determina-

tion. *See Furtado v. Bishop*, 635 F.2d 915 (1st Cir.1980); *Lindy Brothers Builders, Inc. of Phila. v. American Radiator & Sanitary Corp.*, 487 F.2d 161 (3rd Cir. 1973); *In re Bishop, supra.* Upon a determination of the lodestar, the Bankruptcy Code then requires the Court to make a determination of "reasonableness" based on all the surrounding circumstances. 11 U.S.C. § 330. In this regard, the Court has authority to make upward or downward adjustment to include an additional award of compensation for exceptional services or for other reasons. *In re Warrior Drilling and Engineering Company, Inc., supra; In re Casco Bay Lines, Inc.*, 25 B.R. 747 (Bkrtcy. 1st Cir.1982).

 The decision as to what is reasonable compensation is left to the discretion of the Court, however, several factors have been suggested by case law. In non-bankruptcy cases the Court of Appeals for this Circuit has used the term "exceptional success" in justifying additional fees based on performance of counsel, victory under unusually difficult circumstances or with an extraordinary economy of time, results achieved, or the establishment of significant new law. *Ramos v. Lamm, supra* at 557. The Supreme Court has noted that "in some cases of exceptional success an enhanced award may be justified." *Hensley v. Eckerhart*, 461 U.S. 424, ——, 103 S.Ct. 1933, 1941, 76 L.Ed.2d 40, 52 (1983). It is abundantly clear, however, that awards of fees in excess of the lodestar should occur only in rare cases. *Hensley v. Eckerhart, supra; Ramos v. Lamm, supra.* Equally as clear is the mandate that the Court provide concise and clear explanations of its reasons for the additional fee award, *Hensley v. Eckerhart,* and that the applicant carry the evidentiary burden necessary to justify entitlement to additional compensation. *Blum v. Stenson*, —— U.S. ——, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984). This latter evidentiary point is noted with the caveat that request for fees "should not result in a second major litigation." *See Blum v. Stenson, supra,* —— U.S. at

—— n. 19, 104 S.Ct. at 1550 n. 19. (citing *Hensley* ).

■ Wilson Foods Corporation is a large public company with stockholders exceeding 24,000 and involving some $31 million of unsecured debts. Counsel for the Unsecured Creditors' Committee is experienced in bankruptcy matters and the Court observes that their performance in these matters confirms their capabilities. At least partially as a result of their efforts this reorganization has moved swiftly and achieved 100% payment for creditors with the time value of their claims.[2] The time in which these debtors have reorganized has been a savings in itself for had the Committee caused delay the administrative expenses would continue to mount. Moreover, the special skills and experience of counsel for the Committee necessarily would be a time saving factor in novel and complex cases such as this. Consequently, the naked lodestar calculation may easily not be fully compensatory under such circumstances. *See Copeland v. Marshall,*[3] 641 F.2d 880, 893 (D.C.Cir.1980); *In re Casco Bay Lines, Inc., supra,* at 756.

■ At the hearing for additional compensation counsel for the Committee supported the request with documents and testimony from the Chairman of the Unsecured Creditors' Committee. The chairman represented the largest unsecured creditor on the Committee, and is himself an experienced trial lawyer. He outlined the various negotiations which were undertaken by counsel during the course of the case. His testimony included discussions of how counsel for the Committee had managed to keep the various creditors together when often there were competing interests. He noted counsel's ability to continually prevent the Committee from acting on individual interests rather than in their capacity as representatives of the entire class. He also noted that due to tough negotiations with the debtors, creditors have a serious potential of receiving their payments within 2 to 3 years. In conclusion he noted the additional compensation requested by the Committee's counsel was modest under the circumstances. We find that this record adequately satisfied the evidentiary burden of *Blum v. Stenson, supra.*

■ Section 330 of the Code directs us to find what compensation is "reasonable" based on the "time, the nature, the extent, and the value of such services." Clearly, what is "reasonable" must necessarily relate to the evidence presented. *Matter of Permian Anchor Services, Inc.,* 649 F.2d 763, 768 (10th Cir.1981). Therefore, we turn to the language of § 330 to determine what is reasonable in light of the evidence which is before us.

The first component we examine is that of time. In a bankruptcy proceeding this factor takes on several characteristics including the traditional "lodestar" concept. It should also include the duration of the case and the attendant results where a plan has been brought to confirmation expeditiously. It may also include consideration of how long creditors are made to await payment of their claims and how the payment may have been facilitated or enhanced by efforts of counsel. In examining the time factor here, it becomes obvious that counsel has adequately presented points evidencing favorable time considerations. These points have already been noted and it serves no purpose to repeat them.

Next we are directed to examine the "nature" of the services provided. We take this term to relate both to the combination of qualities which represent the

2. We do not overly emphasize the fact that creditors here receive 100% payout under the confirmed plan as this happened as a matter of what could best be accomplished in the case. The correct focus for fee consideration is determine whether the *maximum* payout was achieved based on the totality of the circumstances. Consequently, a less than 100% payout would not automatically preclude the award of additional fees.

3. We note that the emphasis on "prevailing" in civil rights or anti-trust cases does not become germane in bankruptcy cases for purposes of fee determination. Rather our focus is not on what party prevails but what is reasonable pursuant to § 330 of the Code.

counsel's abilities as well as reference to the specific tasks performed in the case. This determination must be weighed by the bankruptcy judge against his own knowledge, experience and expertise in similar matters. The testimony was that counsel provided invaluable services to the Committee and the actual services were performed in a highly competent manner. Having observed counsel during the course of these proceedings and in light of the testimony we are satisfied counsel is of unquestioned competence. The actual nature of the services have included legal questions and issues on extremely complex commercial, labor as well as bankruptcy matters. The unique posture of this case perhaps mandated a nature of services which may be described as comprehensive and intricate. These services required and demonstrated skill and judgment which only counsel experienced in this specialized area would possess.

The Code also asks that we consider the "extent" of the services which were provided. This is the most nebulous of the Code terms and therefore we understand it to take on a broad range of factors relating to the scope of services provided and the impact of those services on the ultimate results achieved. In this case counsel represented in our view the most important and necessary party which a debtor must work with in a reorganization case. The Creditors' Committee constituted aggregate debts of some $31 million and its influence impacted on every aspect of the case. Hardly any event or undertaking in this case was extraneous to this Committee's consideration and counsel must have remained abreast of all actions. Consequently, the extent of these services are difficult to measure, but certainly their importance cannot be denied.

The Code directs that we must weigh the "value of such services" in determining reasonableness. This is the most comprehensive of all the factors and properly is defined by those points outlined in *Johnson v. Georgia Highway Express, Inc., supra.* In light of the twelve *Johnson* factors the total value of these services are found to be quite reasonable.

Finally, the Code commands the Court to look to the cost of comparable services other than in bankruptcy proceedings. In light of the discussion which follows pertaining to the total fee request we do not find the award here to be incompatible with awards in anti-trust, tort, civil rights or other major commercial cases. Indeed, in many instances awards for such cases may be much higher under the appropriate circumstances. However, we note that such comparisons are extremely difficult since many of these non-bankruptcy cases relate to whether the party prevails at trial or other facts not present in bankruptcy cases.

These various terms in § 330 are undefined in the Code and our attempt here is not in the strict definitional sense, but to provide some context and parameters of judging "reasonableness" of fee applications. Also, although we have approached each term in isolation, the Code language indicates the inter-relationship of the terms and their employment in fee determination matters.

The Committee's counsel fee request amounts to $247,575 for 1,634.50 hours. This averages approximately $151 an hour for the services rendered. Counsel seeks additional fees in the amount of $37,500, approximately 15% over the lodestar amount.

By way of further comparison, the total fee request of counsel amounts to approximately 10% of the total fees to date for all counsel in this case. Moreover, this total fee award would be less than 1% of the debtors' assets and less than 1% of the Committees' claims which will be paid out at 100%.

We find this request to be reasonable and constitutes one of those rare instances where additional fees can be justified. We emphasize that additional compensation will not be granted routinely. Only in the most exceptional cases would it be proper for counsel to seek any additional compensation and only when the record and evi-

dence so warrant may the Court undertake to grant such awards.

Accordingly, for the reasons set forth it is ordered that the application for additional compensation be and hereby, is granted. The objections of the debtors are overruled and they are directed to pay the additional sum of $37,500 as reasonable compensation to counsel for the Official Unsecured Creditors' Committee.