In re PEOPLES SAVINGS & INVESTMENT, INC., EID 73–1264654, Debtor.

Bankruptcy No. 85–70151.

United States Bankruptcy Court, E.D. Oklahoma.

July 14, 1989.

As Corrected Aug. 14, 1989.

Thomas E. English, Tulsa, Okl., for English, Jones & Faulkner.

Sidney K. Swinson, Tulsa, Okl., successor trustee.

## ORDER

JAMES E. RYAN, Bankruptcy Judge.

On February 9, 1989, a Second Motion for Interim Allowance of Compensation and Reimbursement of Expenses filed on May 30, 1988 (Docket Entry No. 1473) and a Final Motion for Allowance of Compensation and Reimbursement of Expenses filed on February 9, 1989 (Docket Entry No. 1661) by the attorneys for the Former and Successor Trustees came before this Court for hearing. Also coming on for consideration is the Objection and Response of the Successor Trustee to the Second Motion for Interim Allowance of Compensation and Reimbursement of Expenses of English, Jones & Faulkner (Docket Entry No. 1594), as well as a Reply to the Successor Trustee's Response; and Motion to Amend Second Motion for Interim Allowance of Compensation and Reimbursement of Expenses of English, Jones & Faulkner (Docket En-

try No. 1605). Appearances were entered at the hearing by Thomas E. English on behalf of the movant law firm of English, Jones & Faulkner; Sidney K. Swinson, Successor Trustee; Retha Webb, Dorothy Fletcher, Johnny McDaniel, Richard Hargy and numerous other concerned unsecured creditors voicing various opposition to the Motion for Compensation.

After due consideration of the above referenced pleadings and particularly of the arguments of the parties appearing at the hearing, this Court does hereby enter the following Background of Case, Findings of Fact, Conclusions of Law and Discussion in this core proceeding:

## BACKGROUND OF CASE

Peoples Savings and Investment, Inc. was an investment institution with approximately fifteen hundred depositors and investors. This institution did not have the benefit of the protection of the Federal Deposit Insurance Corporation or any State guaranteed fund to insure the deposits of Peoples.

On March 29, 1985, a Petition seeking relief under Chapter 11 of the United States Bankruptcy Code was filed commencing this case. However, it soon became apparent that reorganization of the failed institution was impossible in the opinion of the Debtor–in–Possession and thus, on November 14, 1985, the case was converted to a Chapter 7 proceeding by and through an Order of this Court. At that time James R. Adelman was appointed Trustee for the estate.

The Former Trustee was empowered to operate the business in order to effectuate a higher return to creditors. The necessity for employment of legal counsel became apparent from the numerous Motions to Modify the Automatic Stay and other actions brought against the estate.

Further, the extensive property holdings of the estate and the legal problems associated therewith required the employment of legal counsel for actions to be brought on behalf of the estate as determined by the Former Trustee and his attorneys. Pursuant to this request, the movant was employed on behalf of the estate and the Former Trustee to render legal services.

## FINDINGS OF FACT

1. On November 22, 1985, Thomas E. English of the law firm of English, Jones & Faulkner was duly approved as counsel for the Trustee as evidenced by an Order entered on that date.

2. Upon the resignation of the Former Trustee, Sidney K. Swinson was duly appointed as the Successor Trustee in this case on May 23, 1988. Movant continued to serve as counsel for the Successor Trustee at that time.

3. On August 17, 1987, an Order was entered approving compensation to the movant for professional legal services rendered for the period of November 14, 1985 through April 30, 1987. Said compensation consisted of $82,838.50 with $2,067.02 as reimbursement for expenses. Movant has received 75% ($62,128.88) of the total compensation awarded, together with the aforementioned reimbursement for expenses, with the remaining 25% ($20,709.62) to be distributed upon a determination of final compensation.

4. Movant's Second Motion for Interim Compensation seeks reimbursement for 1,006.2 hours expended by the various members of the movant firm at the following rates of compensation:

| | |
|---|---|
| Thomas E. English | $150 per hour |
| Bruce Jones | $125 per hour |
| Benjamin C. Faulkner | $125 per hour |
| Stephen S. Rankin | $ 85 per hour |
| Carol Wood | $ 95 per hour |
| Douglas S. Tripp | $ 85 per hour |
| Paula A. Jackson | $ 75 per hour |
| Karen Stevens–Minor | $ 85 per hour |
| Allan Smith | $ 50 per hour |
| Paralegal Assistants | $ 30 per hour |
| Shirley A. Bishop | $ 30 per hour |
| Linda Estes | $ 30 per hour |

Movant requests compensation in the Final Motion for some 157.7 hours expended at the same hourly rates referenced hereinabove.

5. The legal services performed by the movant require a compilation of the various individual services into broader task cate-

gories in order for this Court to perform a proper evaluation on a cost to the estate versus benefit derived for the estate analysis. As such, the following represents the general tasks performed, the time expended and charged to the estate on each said task as estimated by the movant at the hearing on these Motions and finally, the evaluation by the Successor Trustee on the results obtained by the movant from each task. This Court will rely heavily but not exclusively upon the assessment of the Successor Trustee on these matters as the party before this Court who is most intimate with the work performed and as the employer of the movant professionals since May 23, 1988.

■ (a) *Nunley Matter*—This matter involved Sara Ann Acres consisting of 40 lots located in Sapulpa, Oklahoma. The Debtor loaned money to Nunley for the purpose of developing a housing subdivision. However, the development was only partially developed and unsuccessful. The Debtor held Second and Third Mortgages on the various properties involved. Subsequently, Nunley filed for bankruptcy, revealing numerous title problems and transgressions by Nunley. The mortgage situation and the aforementioned title problems created a complex legal matter for which the movant attorneys were utilized. Successor Trustee does not dispute the time spent in the matter nor the necessity for said time. In the words of the Successor Trustee, this was "just a bad deal" but nonetheless required the legal services of the movant firm. This Court concludes the time expended for this item as reasonable.

TIME EXPENDED: 11% of total or 128.-03 hours

■ (b) *Orchard Park Development*—This matter involved a loan of some $500,-000, later increased to $880,000 to Park Development, Inc. for the development of property located in Muskogee, Oklahoma. A lawsuit was brought by movant to foreclose and collect the money from the principals and borrowers and to pierce the corporate veil of the borrower. This matter was in fact settled and a recovery for the estate was obtained. The Successor Trustee of-

fers no objection to the requested compensation for this matter, considering the legal complexity and results obtained. This Court finds the necessity and difficulty of the matter in light of the results justifies the time expended.

TIME EXPENDED: 22% of total or 256.-06 hours

■ (c) *Preference Actions Against Withdrawing Depositors*—These actions were brought against parties who cashed Certificates of Deposit early, within ninety days of the bankruptcy. Five such actions were brought by the movant firm on behalf of the Former Trustee. Upon further investigation and research, movant determined that the actions were not meritorious. The Successor Trustee states that these actions brought no benefit to the estate and the justification for same was wholly lacking. As such, the Successor Trustee recommends no compensation be paid for these actions since only one of the five cases was settled for any benefit to the estate. This Court finds the bringing of these actions as wholly lacking in legal foundation. Thus, compensation for the entirety of time expended for this matter shall be denied.

TIME EXPENDED: 13% of total or 151.-31 hours

■ (d) *Inland Mortgage*—This matter involved adjusting loans in Tulsa County on behalf of the Debtor. The Successor Trustee reports that some benefit was reaped by the estate in the expenditure for these services, and thus does not oppose compensation for such. The time expended is found to be reasonable by this Court.

TIME EXPENDED: 5% of total or 58.2 hours

■ (e) *Set-off Investigation*—The movant examined loans and deposits in the Debtor for a determination if set-off was indeed applicable. The Successor Trustee concurs with the movant that said investigation into the possibility of set-off was necessary and thus acquiesces in the compensation requested. The necessity of the

action justifies the time expended in this Court's view.

TIME EXPENDED: 1% of total or 11.64 hours

▪ (f) *Flick Matter*—This matter involved pending litigation brought by the Former Trustee against Michael Flick in State Court. Pursuant to this litigation, Flick filed a Counterclaim alleging that a set-off was owed him of some $19,000 and filed a Proof of Claim in this bankruptcy reflecting such. After objecting to the Proof of Claim, a resulting reduction in said claim was obtained to some $8,000. The Successor Trustee does not oppose compensation for services rendered in this area and the Court agrees that compensation should be awarded.

TIME EXPENDED: 2.5% of total or 29.1 hours

▪ (g) *Fraudulent Conveyances*—This matter involved a lawsuit against dissenting shareholders in the Debtor corporation to a proposed action of establishing a holding company. The lawsuit was lost, however, and no benefit was derived by the estate. The Successor Trustee, although acquiescing in the necessity for the bringing of said action, recommends reduced compensation due to the results obtained, or lack thereof. We do hereby find that, based upon the results obtained, movant shall be compensated for one-half of the total time reported as expended for this matter.

TIME EXPENDED: 16.5% of total or 192.04 hours

▪ (h) *Commercial Bank Transaction*—The Debtor mortgaged its loan portfolio, accounts receivable, contract rights, etc. to obtain a loan of $350,000. The value of the loan portfolio was some $250,000. Through the efforts of the movant, Commercial Bank settled for return of the loan portfolio and released the remaining collateral upon payment of $100,000.00 by the estate in full satisfaction of their secured claim in this estate. The Successor Trustee recommends full payment on this matter. The result justifies the time reported.

TIME EXPENDED: 5% of total or 58.20 hours

▪ (i) *Foreclosures on Real Property*—This matter involved foreclosure on Second Mortgages on some fifty properties. No benefit was derived by the estate for this action. Successor Trustee criticizes the actions of the Former Trustee in an evaluation as to whether equity existed in the properties sufficient to justify pursuit of the Second Mortgages. This matter derived no benefit for the estate and thus compensation shall be denied.

TIME EXPENDED: 11% of total or 128.-03 hours

▪ (j) *Phyllis Elias Matter*—Movant pursued action to foreclose on a Mortgage wherein in a previous action the first mortgagor was not named in the original suit nor subsequent lienholders. The movant cleared this matter and benefitted the estate in doing so. The Successor Trustee does not oppose full compensation on this matter. This Court concurs with this conclusion and recommendation.

TIME EXPENDED: 2% of total or 23.28 hours

▪ (k) *Fanny Mae Loan*—This matter involved the purchase by Fanny Mae of the Debtor's Second Mortgage on subject property and the clearing up of Mortgages which were filed out of order. The Successor Trustee states that some benefit was derived by the estate and thus the compensation is justified. Again, we concur.

TIME EXPENDED: 1% of total or 11.64 hours

(*l*) *Fee Applications and Status Reports*—

TIME EXPENDED: 2.5% of total or 29.1 hours

(m) *General Representation*—

TIME EXPENDED: 6% of total or 69.83 hours

The movant also seeks reimbursement of expenses for the following items:

| | |
|---|---|
| Reproduction of Documents: | $4,349.66 |
| Long Distance Telephone Charges: | $ 88.72 |
| Recording Fees | $ 24.00 |

| | |
|---|---|
| Postage Charges | $1,702.70 |
| Title Search | $ 20.00 |
| Travel Expense | $ 24.10 |
| Mileage Fees | $ 339.19 |
| Filing Fees | $ 768.00 |
| Delivery of Documents | $ 17.25 |
| Witness Fee and Expenses | $ 30.00 |
| TOTAL EXPENSES | |
| SOUGHT: | $6,949.16 |

6. A review of the time records provided by the movant kept contemporaneously with the work performed reveals that some items performed by members of the movant firm were not actually legal services but rather were in the nature of overhead costs (i.e., filing and delivery of documents). These items amount to some $2,500 and are deemed noncompensable.

7. The Successor Trustee recommends a reduction in the requested compensation due to the lack of benefit derived by the estate specifically in two areas: the preference actions and the mortgage foreclosures. Further, the Successor Trustee suggests a reduction for those matters involved in the fraudulent conveyance actions due to the time expended and the benefit derived by the estate. Said reductions result in a recommended compensation by the Successor Trustee of $70,797.25 of the amount requested in the Second Motion for Interim Compensation. The Successor Trustee has no objection to the reimbursement of the expenses as requested by the movant. The Successor Trustee did not file a response to the Final Requested Compensation since that Motion was filed on the date of the hearing. However, at the hearing, the Successor Trustee did not object to the requested compensation considering the voluntary reductions in the request referenced in the paragraph hereinbelow.

8. The movant voluntarily proffered a reduction in the request for compensation to the amount suggested by the Successor Trustee for the Second Motion and further volunteered a reduction in the Final Motion to $8,159.50 for the period of May 1, 1988 through January 31, 1989.

## CONCLUSIONS OF LAW

A. In an analysis by the Court of a request for compensation by a professional such as the attorneys in this case, the overriding standard of review is one of "reasonableness," in light of the benefit derived by the estate. Such an analysis is made on the basis of the "time, the nature, the extent, and the value of such services" performed for the benefit of the estate. 11 U.S.C. § 330(a). This "reasonableness" standard has been further illuminated by factors enunciated in various case law. See *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir.1974).

B. The movant firm in this case has set forth sufficient recordation. *In re Wilson Foods Corp.*, 40 B.R. 118 (Bankr. W.D.Okla.1984). However, in analyzing the task breakdown provided by the movant only a percentage of the total time expended for each task was provided with the contemporaneous time records. Without a "dollar amount" placed on each task, this Court and any creditor cannot properly evaluate this Motion to determine the charge to the estate. Since this is the case, this Court is forced to apply an average hourly rate of all members of the movant firm, including legal support staff, to the time expended for each task. This hourly rate is some $80.42. Without sufficient information provided, this Court must be fair and just to the movant, but not penalize the estate for this deficiency.

C. The applied hourly rates of the members of the movant law firm are considered reasonable in this Court's opinion for compensation of an attorney of the level of expertise that the movant exhibits and for the geographical confines of the Eastern District of Oklahoma. *In re Casco Bay Lines, Inc.*, 25 B.R. 747 (Bankr. 1st Cir.1982). However, this Court notes that the fee of Mr. English is indeed the highest fee that this Court has ever allowed in a Bankruptcy case. Further, as set forth above, an average hourly rate was applied to the time expended on the excluded items.

D. Items of expense which are deemed "overhead" are noncompensable. *In re Citizens Mortgage Investment Trust*, 37

B.R. 813 (Bankr.D.Mass.1984). "Overhead" is generally defined as:

> All continuous administrative or general costs or expenses incident to the operation of the firm which cannot be attributable to a particular client or case. The term is not definable with exact precision, but may be exemplified by such items as rent, taxes, insurance, lighting, heating and other office expenses, including *secretarial services*. (Emphasis added)

*In re Jensen–Farley Pictures,* 47 B.R. 557, 584 (Bankr.D. Utah 1985).

This definition has been expanded to include "local mileage, ordinary course of business postal charges, unnecessary 'express' mail or local messenger services, word processing, local telephone charges, books and basic subscriptions for computer research tools." *In re Seneca Oil Company,* 65 B.R. 902 (Bankr.W.D.Okla.1986).

■■■ Movant requests compensation for members of the firm who rendered services in the form of either filing or delivering documents. Said amounts are considered overhead and thus are not compensable.

The amounts of compensation attributable to said areas result in a reduction of $2,500.

■■■ E. This Court further recognizes the use of interoffice conferences by members of the movant firm to a minimal extent. Normally, this Court considers such conferences to be noncompensable. However, the movant firm has only charged for one party to said conferences and, further, the complexity of the matters involved and the numerous members of the firm participating in the rendering of legal services makes the use of said conferences reasonable and compensable. No law firm is expected to operate in a vacuum, especially when involved litigation is present, but such conferences are always subject to exclusion due to the potential for abuse. Each individual attorney is employed for his individual skills and thus is expected to act and think, to a large extent, independently.

■■■ F. Some objection has been lodged by the unsecured parties participating in the hearing that an extensive amount of review of files and work performed is charged to the estate with little or no apparent benefit. Although it is quite understandable that the creditors would have this concern and we agree that the potential for abuse is great in "padding" time and expense records, a careful review by this Court of the records provided by the movant firm reveals, in this Court's opinion, that the review to the extent charged the estate was necessary for the rendering of effective legal services. We find no abuse in this regard.

G. We also recognize the concern of all creditors with the prolonged and protracted administration of this estate. We further recognize the exasperation of these creditors with the activities of the Former Trustee. However, there is no evidence in the record or through the investigation of the Successor Trustee, in whom this Court places considerable confidence, that the movant firm has in any way contributed to the problems associated with this estate. As such, the movant firm cannot be charged as the "scapegoat" for all the ills conceived and perpetrated in this case. The movant firm was entrusted with a duty to render legal services in a fair and adequate manner, and to the extent possible, appears to have accomplished this. However, although not charged with his client's actions, an attorney is expected by this Court to evaluate a particular action and advise the client, whether he be a Trustee in Bankruptcy or neighbor suing a neighbor, as to the viability and advisability of an action before pursuing it and not to blindly enter into the fray because a client has put the attorney on the trail of fresh game. In some instances in this case, the actions pursued were not sound.

We also recognize the ability of the Court in a bankruptcy compensation scenario to use "twenty-twenty hindsight" in order to determine the direct benefit derived by the estate and the successes of a professional employed for the estate in awarding final compensation. But this is the nature of employment in a bankruptcy

case and those who participate do so with this understanding. As such, we find that the compensation requested be reduced to $62,982.80, representing reductions as follows:

| | |
|---|---|
| Beginning restored balance (without voluntary reductions): | $95,669.25 |
| Fraudulent conveyance reduction: | $ 7,721.93 |
| Preference action reduction: | $12,168.95 |
| Foreclosure reduction: | $10,296.17 |
| Overhead reduction: | $ 2,500.00 |
| TOTAL | $62,982.80 |

H. The items for reimbursement of expenses are deemed to be reasonable. The size of the creditor matrix lends an appearance of over inflated charges of copying and postage. However, such costs are justified and shall be granted in full.

## DISCUSSION

This Court takes this opportunity to state its general philosophy on the compensation of professionals pursuant to 11 U.S.C. § 330 and specifically attorneys appointed and compensated in a bankruptcy estate. Initially, the relationship between the integral parties to the process must be established and understood.

Representation by an attorney in a bankruptcy estate is analogous to the normal attorney/client relationship and should be treated as such in reporting services performed for the benefit of the Trustee, the estate or a client (debtor). No mystical difference exists, in this Court's view, between the relationship between the Trustee and their attorney or between a client (debtor/creditor) and their attorney and the relationship between a receiver and their attorney in a State Court proceeding. It is still that of a fiduciary and an attorney/client relationship. The problem frequently presented to the Bankruptcy Court by a request for approval of compensation by attorneys, Trustees and other professionals is the trend toward quantifying the work performed and mechanically applying this quantity identified as "hours expended" to an hourly amount and thus expecting the Court to assume that the time spent on the case was useful, productive and

necessarily expended for the benefit of the estate or in helping the Trustee perform his duties. It is the hope and indeed the requirement of the Bankruptcy Court of the Eastern District of Oklahoma that an attorney, Trustee and all professionals seeking compensation from the bankruptcy estate will enter into the same type of oratory and expansive explanation of their services rendered in reporting to the Court the fees requested as would be demanded by a paying client—because that is exactly the relationship of a bankruptcy estate Trustee to his professionals. The Court and the Trustee reasonably expect a subjective analysis by the attorney stating what exactly was done, what was necessary and the quality of the work performed in the attorney's opinion.

The attorney should not be reluctant to set forth an eloquent argument of the benefits brought to the estate derived from his services. Of course, counsel will recognize the aspects of his service and time spent that may have been expended unnecessarily, but these will be downplayed in the report as an attorney would downplay conflicting case law in a brief submitted to argue a position. In this way, and with this type of reporting, the Court can comfortably approve fees submitted for consideration in a bankruptcy case and more importantly to the attorney, it is the only way the attorney will be paid at all.

While there exists this duty placed upon the attorney to justify and account for services performed for the benefit of the estate, a reciprocal duty is incumbent upon the Trustee to evaluate the performance of the attorney or other professional employed throughout the performance of the service for which the professional was engaged. Pursuant to this obligation, this Court requires that a Trustee respond to all requests for compensation for the services rendered by the attorney or other professionals throughout the course of their fiduciary relationship. This presents a unique opportunity for the services of a professional, the attorney, to be examined by the client, the Trustee. Such

response by the Trustee is taken with the utmost seriousness by the Court and is not viewed as simply performing a "rubber stamp" function. In the instant case, for example, the Successor Trustee's opinion and evaluation of the services performed was essential to this Court's proper scrutiny of the matter.

Likewise, the participation by the United States Trustee in those matters involving Motions for compensation pursuant to the United States Trustee's duty contained in 28 U.S.C. § 586(a)(3)(A) is essential and figures greatly into the amorphous equation necessary in the evaluation of compensation requests.

This Court also relies heavily upon creditor participation in objecting to compensation requests where appropriate. Far too often, a Motion or Application for Compensation is filed in this Court with little or no input from creditors, especially unsecured creditors, from whom the compensation of the particular professional will be paid. If the attorney or professional reports performance of the services for which he was employed, and which were essential for the completion of the administration of this estate, via their contemporaneous time and expense records provided with the Application, it is the opinion of this Court that it would be presumptive and arbitrary to deem the professional's fees anything but "reasonable" if no objections were filed to the requested compensation, save obvious abuse set forth by file review or revealed in their Application. Absent creditor input as to whether a fee or time spent on a particular task is excessive, this Court has questionable legal foundation for a contrary determination. The creditors have, or should have, worked closely with the attorney or professional and thus should be most familiar with his performance. This Court will interpret creditor silence in the matter as creditor acquiescence. Beyond an examination of the Court file, the reasonableness of the applied hourly rate, the sufficiency of the records provided to allow for proper evaluation, and absent gross miscalculation, misrepresentation or excessiveness, no basis exists for this Court to intervene in whether a professional spent too much time on "Task A" or too much time on "Task B."

Not only does this Court expect specific and detailed time records, but especially when involved or complex legal or factual matters have been confronted, a breakdown as to specific tasks performed and the allocation of individual hourly expenditures per task is required. This will allow the Court, Trustees and creditors to place the service rendered into the proper perspective in the overall representation of the estate. The movant in the instant case properly set forth tasks involved, and the time expended for each but failed to place a charge for each task which accounted for the multitude of individual hourly entries on the time records provided by the movant firm. Such information is essential.

It would seem that the Congress intended in the writing of the Bankruptcy Code in this area at 11 U.S.C. § 330 to leave the area open for true Court interpretation by the use of such phrases as "reasonable compensation for actual, necessary services rendered ..." to be "based on the nature, the extent, and the value of such services, the time spent on such services, and the cost of comparable services other than in a case under this title." 11 U.S.C. § 330(a)(1). Thus, the scrutiny of the services rendered is to be viewed in this Court's opinion, in the context of the normal attorney/client or professional/client relationship, not creating a special analysis for review for the bankruptcy scenario. In such an analysis, naturally the skill, experience, and the success of the professional is taken under consideration, all tempered by the fact that the services performed must be actual and necessary. But there is much room for interpretation.

A brief discussion of what this Court is seeking in a professional fee request is in order. A beginning point for a professional preparing a fee request is the recognition of the billing judgment standard. *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). Namely, preparation and disclosure of all time expended in a particular case should be provided; however, the attorney or professional should then review and analyze

the bill for items above and beyond what would typically be charged to a normal client. These items should be discounted from the overall amount charged and clearly indicated as having been discounted.

It is further clear that the factors enunciated in the *Johnson* case, supra, must be applied to all fee requests. Those factors are enunciated herein.

Attention should then be narrowed to the reasonableness of the individual tasks performed. The threshold to each task is a business judgment test as to whether engagement into each activity was necessary in light of the circumstances then in existence. When a Trustee or professional's expectations are not tempered by the solvency of an estate, the result oftentimes is that the case is administered solely for the particular professional's benefit.

Regardless of the ultimate approach utilized by the reviewing Court, a professional would be well advised to style an Application for Compensation in a manner that would facilitate communication with the Court and other creditors seeking to evaluate the request. Logic dictates that such an Application should begin with a narrative discussion of the professional's involvement with the proceeding, including date and conditions of employment. Also, the periods covered and results of earlier fee determinations should be specifically set forth. The various tasks performed, such as "defense of a Motion to Change Venue" should be separately and narratively disclosed. Each description should state the reason behind pursuit of each task; the total compensation/expenses related to the task; the benefit conferred upon the estate. If no benefit was conferred, then further explanation of involvement in the task should be completed. Movants shall be individually identified with description of qualifications such as bankruptcy background and experience. The hourly rate at which such individual is typically billed should be disclosed and be capable of being supported by evidence.

■ All expenses should be separately and specifically identified as to reason and date incurred. Overhead items are presumed non-reimbursable. See *In re Farley Pictures,* supra. Where applicable, a strict demarcation of "Trustee's duties" from professional services should be indicated when the Trustee is authorized to act as attorney or accountant for the estate.

The recently adopted Rules of Professional Conduct in the State of Oklahoma incorporate many of the same criteria considered in the determination of attorney's fees in the bankruptcy scenario that are necessary in determining the "reasonableness" of attorney's fees for disciplinary purposes. This is addressed in Rule 1.5 of the Oklahoma Rules of Professional Conduct (Oklahoma Bar Journal, Vol. 59, No. 26B, June 25, 1988), wherein many of the same factors enunciated in the *Johnson* case are set forth therein.

■ Additionally, this Court has determined a base amount that an attorney is allowed to charge the Trustee in the estate on a per hour basis. This amount is founded on the practical proposition that a minimum dollar amount is required by the sheer economics of keeping the doors to a law practice open while providing a modicum of a profit incentive. Representation of a bankruptcy estate is not intended to result in an attorney's early retirement, but neither should an attorney be forced to suffer a loss simply because he chooses to represent a bankruptcy estate.

Naturally, the per hour amount will fluctuate periodically as a change in market conditions warrants flexibility. Also, it follows that the base fee will differ from District to District, depending on differing overhead costs and sundry expenses associated with a particular geographic area. From this figure, the fee will be adjusted upward accordingly, with other considerations such as the expertise of the attorney, the difficulty of the legal issues and the various other factors which have been thoroughly discussed previously herein.

■ There is a further consideration which all attorneys who come before this Court should bear in mind. The Bankruptcy Court in the Eastern District frowns upon the practice of attorneys using the representation of a bankruptcy estate as a vehicle for their education in the Bankruptcy Code. The responsibility in represent-

ing the Trustee is too great and the attorney's role in the bankruptcy process too important to tolerate this behavior. Thus, this will be a further factor that this Court takes into account when considering approving attorney's fees, as any fee derived from "going to school" on the Court will be noncompensable.

It is the intent of this Court that the philosophy set forth herein will give guidance to an attorney seeking to come before this Court to apply for compensation and we are hopeful that this statement is useful for that purpose.

IT IS THEREFORE ORDERED that Thomas E. English of the law firm of English, Jones & Faulkner, is hereby granted compensation in the amount of $62,982.80 in full and final compensation for legal services rendered for this estate. Additionally, the movant is granted reimbursement of expenses in the amount of $6,949.16 for actual, necessary expenses.

IT IS FURTHER ORDERED that the Successor Trustee pay to the movant law firm of English, Jones & Faulkner the balance of compensation awarded in this Court's Order of August 17, 1987, in the amount of $20,709.62.